STEVEN C. STONE, Plaintiff in Error, v. LIBERTY MUTUAL INSURANCE COMPANY, Defendant in Error.—397 S.W.(2d) 411.

Eastern Section. June 16, 1965.

Certiorari Denied by Supreme Court October 8, 1965.

190

Stone & Kirkland, Chattanooga, for plaintiff in error.

Strang, Fletcher, Carriger & Walker, Chattanooga, for defendant in error.

McAMIS, P. J. This is an action upon an uninsured motorist rider attached to the public liability policy issued by defendant, Liberty Mutual Insurance Company, to the plaintiff, Steven C. Stone. The case turns on whether an automobile insured in a company which becomes insolvent after the accident is an uninsured automobile in the sense of the policy.

The rider requires the insurer:

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such insured automobile. * * *"

The policy defines an uninsured automobile as follows:

"The term 'uninsured automobile' means an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy *applicable at the time of the accident* with respect to any person or organization legally responsible for the use of such automobile. * * *" (Italics ours.)

The trial court in a memorandum opinion held that, since the motorist causing the injury to plaintiff Stone held a policy in a company not shown to have been insolvent on the date of the accident, the automobile he was driving was covered by an "insurance policy applicable at the time of the accident". The Court then concluded that the subsequent insolvency of the insurer did not authorize a holding that the automobile of the other motorist was not covered by a policy "applicable at the time of the accident".

Plaintiff has appealed from a dismissal of his suit based upon the foregoing construction and application of the rider. The facts are undisputed and may be briefly summarized.

On April 15, 1961, while driving the automobile insured in the defendant Liberty Mutual Insurance Company, plaintiff was struck from the rear by a pickup truck operated by Arnold C. Emory, a resident of Detroit, Michigan. While still at the scene of the collision, Emory showed plaintiff a public liability policy covering the truck issued by Exchange Casualty and Surety Company, also of Detroit. On April 17, 1961, plaintiff wrote Exchange Casualty and Surety Company advising it of the accident. On the preceding day defendant herein had also been notified.

Thereafter, Exchange Casualty and Surety Company referred the claim to a Chattanooga adjuster who carried on negotiations with plaintiff looking toward a settlement. No settlement could be made for several months, however, because of the inability of plaintiff's physician to assess the extent of his disability and not until December 8, 1961, was the medical report delivered to the adjuster.

Early in 1962, probably in February or March, the Chattanooga adjuster of Exchange Casualty and Surety Company advised plaintiff that he had been instructed to do no further work for it and to return all files to the home office. A receiver was appointed March 22, 1962, to take over the Company's affairs.

On March 30, 1962, plaintiff instituted suit in the Circuit Court of Hamilton County against Emory and obtained service through the Secretary of State. No appearance or defense having been made, judgment by default for $9,400.00 was taken against Emory on December 18, 1962.

It appears that during all of this time defendant was kept advised of developments and after its refusal to pay this action was instituted, with the result indicated.

The question presented is difficult. Comparatively few cases deal with the question. We do not seem to have a case in Tennessee on the subject.

██ Riders of this kind are intended, within stipulated limits, to protect the insured against loss through the wrongful conduct of motorists who are uninsured and financially irresponsible. 79 A.L.R.(2d) 1252. While this purpose is to be borne in mind in construing and applying the language of the policy, we are not justified in departing from the plain terms of the policy. In the absence of uncertainty of meaning, conflict of terms or ambiguity the courts must give to the language used its ordinary meaning. Wallace v. State Farm Mut. Ins. Co., 187 Tenn. 692, 216 S.W.(2d) 697; Brown v. Tennessee Auto Ins. Co., 192 Tenn. 60, 237 S.W.(2d) 553.

██ We find no ambiguity or uncertainty of meaning in the definition of "uninsured automobile" above copied.

It simply means an automobile not covered by a policy *at the time of the accident.* If we should say, as might reasonably be argued, that an automobile covered by a policy in a company, insolvent at the time of the accident, was not so covered the question here presented would remain unanswered. It is not shown that the company which had a policy on the Emory automobile was insolvent on that date and the burden of proof is upon plaintiff to make out his case by bringing himself within the terms of the policy.

Such authority as we have been able to find supports the view of the trial court in this case.

This case is quite similar to Hardin v. American Mutual Fire Insurance Company, 261 N.C. 67, 134 S.E.(2d) 142. In that case the policy defined an uninsured automobile as one not insured against "bodily injury and property damage liability bond or insurance policy, *applicable to the accident*" * * *.

The italicized language, unlike the policy in suit, did not directly relate coverage on the other car to the *time* of the accident and in that respect the policy was more favorable to the plaintiff than the policy here sued upon. The Court held, however, that the language of the rider was unambiguous; that the question of coverage was to be related to the time of the accident and that the subsequent insolvency of the carrier of insurance on the other automobile did not entitle the plaintiff to recover against the insurer of his own automobile.

The other cases which have been brought to our attention are: Uline v. Motor Vehicle Acc. Indemnity Corp., 28 Misc.2d 1002, 213 N.Y.S.(2d) 871; Federal Insurance Company v. Speight, D.C., 220 F.Supp. 90. And see 7

194

Am.Jur.(2d) 462, Automobile Insurance, Section 136, entitled "What constitutes an 'uninsured' automobile or mortorist".

In both of the cases cited the carrier of insurance on the automobile which collided with the insured's automobile made no denial of liability but liability could not be enforced because, subsequent to the accident, the company was placed in receivership.

Plaintiff attempts to distinguish the opinion of the District Judge in the Speight case on the ground that, subsequent to the enactment of the 1952 South Carolina compulsory insurance act, the legislature of that state amended the act to provide coverage where the carrier of insurance on the other automobile is declared insolvent or is placed in receivership. It is true the opinion gives some weight to this amendment but the reasoning of the opinion sustains the action of the Circuit Judge in this case, i. e., that liability is determinable as of the date of the accident and that subsequent insolvency of the other carrier does not bring the case within the policy definition of "uninsured automobile".

To hold otherwise would have the effect of reading out of the policy the language "applicable at the time of the accident".

Affirmed.

Cooper and Parrott, JJ., concur.