**Nila E. SHOFFNER and P. V. Shoffner**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**

Supreme Court of Tennessee.

May 7, 1972.

Joe Guess, Knoxville, for plaintiffs-appellees.

Paul E. Dunn, Ray Lee Jenkins, Knoxville, for defendant-appellant.

## OPINION

McCANLESS, Justice.

The plaintiffs instituted suit in the Circuit Court of Knox County for a breach of an insurance contract. From an adverse decision in the trial court, the defendant, State Farm Mutual Automobile Insurance Company, appeals to this Court directly since all facts were stipulated below.

On February 26, 1969, the plaintiff, Nila E. Shoffner, was riding as a guest passenger in an automobile owned and operated by Marie Ousley, which was involved in a three vehicle accident in Union County, Tennessee. The accident involved the Ousley vehicle; a vehicle owned and operated by James Samuel Lewis, an uninsured motorist; and a vehicle owned and operated by Gulf Oil Corporation.

On the date of the accident, the Ousley vehicle was insured by a policy with Southern Fire and Casualty Company pro-

viding Uninsured Motorists coverage with limits of $10,000/$20,000. The plaintiff, Nila E. Shoffner, had a policy of insurance with the defendant which provided Uninsured Motorists coverage with like limits.

The plaintiffs filed suit in the United States District Court against James Samuel Lewis, and by amendment, the Gulf Oil Corporation. The District Court dismissed the action as to the Gulf Oil Corporation, but awarded a judgment against Lewis in the amount of $18,700.00: $6,700.00 to P. V. Shoffner for medical expenses and loss of services and consortium; and $12,000.00 to Nila E. Shoffner for pain and suffering.

Southern Fire and Casualty Company subsequently paid its full limits of $20,000.-00 to Mrs. Ousley and her passengers; Mrs. Shoffner's share being $5,137.00. State Farm paid $4,819.64 to the Shoffners under the medical payments portion of their policy, but recovered this entire amount, less attorney fees, from the $5,137.00 settlement as subrogation. The Shoffners brought the present action against State Farm when it refused to pay anything under the Uninsured Motorists provision of its policy. The trial court entered judgment for the plaintiffs in the amount of $4,863.00, being the difference between $10,000.00 and the settlement of $5,137.00.

The defendant assigns as error that the trial judge erred in failing to give full validity to the defendant's "other insurance clause", which provides:

"*Other Insurance.* With respect to bodily injury to an insured while occupying an automobile not owned by a named insured under this coverage, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum

of the applicable limits of liability of all such other insurance."

Defendant averred that the above clause was validated by T.C.A. § 56–1152, which provides:

"*§ 56–1152. Minimum policy limits not increased.* Nothing contained in §§ 56–1148–56–1153 shall be construed as requiring the forms of coverage provided pursuant to §§ 56–1148–56–1153, whether alone or in combination with similar coverage afforded under other automobile liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in § 59–1206. Such forms of coverage may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits."

Tennessee Code Annotated § 56–1148, Automobile Liability Insurance—Uninsured Motorist, provides:

"No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than limits for bodily injury or death described in Sec. 59–1206, subject to provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage; provided fur-

ther that, unless the named insured requests such coverage in writing, the coverage need not be provided in or supplemental to, a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer."

■ Our uninsured motorists statute was enacted in response to the growing public concern over the increasing problem arising from property and personal injury damage inflicted by uninsured and financially irresponsible motorists. Its purpose is to provide, within fixed limits, some recompense to innocent persons who receive bodily injury or property damage through the conduct of an uninsured motorist who cannot respond in damages.

Litigation in other jurisdictions has resulted in divergent trends. Some courts have stated that the design and purpose of uninsured motorists statutes are to provide protection only up to the minimum statutory limits for bodily injuries, and not to provide the insured with greater insurance protection than would have been available had he been injured by an insured motorist. Such reasoning has led to the result that "other insurance" and similar provisions are held to be valid where they do not reduce coverage below the statutory minimum. Miller v. Allstate Ins. Co., 66 Wash.2d 871, 405 P.2d 712 [1965]; Russell v. Paulson, 18 Utah 2d 157, 417 P.2d 658 [1966]; LeBlanc v. Allstate Ins. Co. [La. App.1966] 194 So.2d 791; Globe Indemnity Co. v. Baker's Estate, 22 A.D.2d 658, 253 N.Y.S.2d 170 [1964]. Other courts hold that "other insurance" provisions, whether in the form of "pro-rata", "excess insurance", "excess-escape", or other similar clauses are invalid when contained in uninsured motorist policies on the ground that this type of provision is contrary to the policy behind such compulsory statutes. Sellers v. United States Fidelity and Guaranty Co., 185 So.2d 689 [Fla.1966]; State Farm Mutual Auto. Ins. Co. v. Barnard, 115 Ga.App. 857, 156 S.E.2d 148 [1967];

Moore v. Hartford Fire Ins. Co. Group, 270 N.C. 532, 155 S.E.2d 178 [1967]; Bryant v. State Farm Mutual Auto. Ins. Co., 205 Va. 897, 140 S.E.2d 817 [1965].

The theory on which the latter group of decisions appears to be based is that the courts will not permit an insurer to avoid its statutorily imposed liability by its insertion into the policy of a limitation clause which restricts the insured from coverage for which he has paid the premiums. Safeco Ins. Co. of America v. Jones, 286 Ala. 606, 243 So.2d 736 [1970]. These courts insist that a compulsory motor vehicle insurance act is remedial in nature and should be liberally construed to effect the beneficial purpose intended by its enactment. Moore v. Hartford Fire Ins. Co. Group, supra. Further, in the cases cited above, great emphasis is placed upon the fact that their statutes in no way limit the amount of recovery.

In Geyer v. Reserve Insurance Company, 8 Ariz.App. 464, 447 P.2d 556, *Sellers* was followed and later, in Transportation Insurance Company v. Wade, 11 Ariz.App. 14, 461 P.2d 190 [1970], the court said:

"The Transportation Insurance Company states that the purpose of A.R.S. § 20–259.01 was to provide only a minimum amount of uninsured motorist protection, and since the plaintiff has received this minimum from Farmer's Insurance Exchange, recovery should be denied here. It is our opinion that Arizona's uninsured motorist statute is designed to protect the insured as to his actual loss within such limits and his recovery should not extend past his actual loss. However, our statute does not limit an insured to only one $10,000 recovery where his loss exceeds that amount and he is a beneficiary of more than one policy issued under A.R.S. § 20–259.01. *While a minimum amount is set by the statute, nowhere does the act place a limit on the total amount of recovery."* (Emphasis supplied.)

Again, in *Travelers Indemnity Company v. Williams,* 119 Ga.App. 414, 167 S.E.2d 174 [1969], the court said:

"(The Virginia statute) * * * commands that no policy of bodily injury liability insurance shall be issued or delivered unless it undertakes to pay the insured 'all sums' he is legally entitled to recover as damages from the owner or operator of an ininsured motor vehicle within the limits of the policy. That is plain language. It means that every policy shall so undertake. There is no limitation or qualification of this language anywhere in the statute, nothing at all to indicate that it does not mean what it says. * * *"

The Georgia court also said:

"The appellant insists that Ga.Code § 56–407A intends to provide a limit of $10,000 for any one person in a collision with an uninsured motorist. With this contention we cannot agree. The insured would be entitled to recover his actual loss that was within the limits of the multiple policies. *While the statute does provide a minimum of $10,000 coverage under the uninsured motorists endorsement, it does not limit an insured to recover only that amount when his loss for bodily injury exceeds that sum.*"

In Harleysville Mutual Casualty Co. v. Blumling, Penn., 429 Pa. 389, 241 A.2d 112 [1968], it was said:

" * * * The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers. The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by the statute, but nowhere, explicitly or implicitly, does the act place a limit on the total amount a victim may recover if he suffers a loss resulting from the negligence of an uninsured motorist."

And, finally, in *Safeco,* supra, the Alabama court stated:

"We hold that our statute sets a minimum amount for recovery, but it does not place a limit on the total amount of recovery so long as that amount does not exceed the amount of actual loss. . . ."

In the present case, we are involved with a different situation, to wit: the construction and interpretation of T.C. A. § 56–1152 which provides that the minimum policy limits shall not be increased. The pertinent provisions state that ". . . [N]othing contained in §§ 56–1148–56–1153 shall be construed as requiring forms of coverage . . . to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in § 59–1206." We interpret this section to be an express declaration of legislative intent to establish a recovery which may be had under our uninsured motorist statute. The statutory language clearly reflects the fundamental legislative design that the insured be placed in as good a position as, but no better position than he would occupy if he had been injured by an individual who complied with the financial responsibility law. Because a recovery has been set by statute, we cannot follow the reasoning or holdings of those states which would invalidate "other insurance" provisions as being contrary to their uninsured motorist statute. Neither do we follow that line of cases which view "other insurance" clauses as valid. In short, our decision is not to be interpreted as aligning itself with either trend; for our research indicates that, with the exception of Iowa, we are the only jurisdiction which has enacted such a provision. Consequently, the question before us is not whether "other insurance" provisions are valid or invalid or whether they "conflict" with our uninsured motorist statute; rather, we are concerned solely with the construction and application of Section 56–1152 to the facts before us. The controlling instrument is the statute.

Our statute provides for a limited type of compulsory automobile liability coverage for bodily injury caused by the negligence of an uninsured motorist to the extent of specific amounts. It further provides for a ceiling on the amount of recovery to avoid duplication or "pyramiding". Namely, that the statute shall not require coverage to be extended in excess of that afforded the insured had he been involved with an accident with an insured motorist with minimum limits. Accordingly, Nila E. Shoffner would have been able to recover $10,000.00 had she been involved in an accident with an insured motorist. Therefore, we affirm the judgment of $4,863.00 entered by the trial judge. Nila E. Shoffner is entitled to recover from State Farm the difference between $10,000.00 (the maximum recovery under the statute) and $5,137.00 (the amount received as her share of the recovery against Southern Fire and Casualty); to wit: $4,863.00

It is necessary to note that the maximum limits placed on recovery under Section 56–1152 depends entirely upon the amount available to the insured had the tort feasor been insured.

The case before us is distinct from State Farm Mutual Automobile Ins. Co. v. Barnette, Tenn., 485 S.W.2d 545 [1972]. In that case, tried under similar facts, Barnette filed suit against two tort feasors: Noel, driver of the motorcycle on which Barnette was riding as a guest passenger; and Dickenson, driver of the automobile which collided with the motorcycle. Dickenson settled with Barnette for $9,500.00. Subsequently, Barnette recovered a $170,000.00 judgment against Noel, an uninsured motorist. Barnette, an insured under a policy issued by State Farm providing uninsured motorist coverage for $10,000.00, claimed State Farm was liable for the full amount of coverage. State Farm admitted liability for $500.00 contending the $9,500.00 received by Barnette through settlement with Dickenson, was an offset against its liability. This Court allowed Barnette the full extent of his coverage, $10,000.00. This appears *prima facie* to be inconsistent with our present holding. On closer scrutiny, both holdings are found to be based upon the same principle. In the Barnette case, there were *two tort feasors*, and thus two separate liabilities; one of which was satisfied by a settlement of $9,500.00; and the other, relating to the uninsured motorist, was limited by the statute to a maximum recovery of $10,000.00. This he was allowed. As in that case, we presently are involved with one tort feasor, and thus the total amount of recovery is limited to $10,000.00. The distinction between the cases is that in this case we have two sources from which to recover the $10,000.00. Therefore, we affirm the judgment of the trial court.

DYER, C. J., CHATTIN, J., and PARROTT and WILSON, Special Justices, concur.