SHAMROCK HOMEBUILDERS, INC., et al.,
Complainants-Appellees,

v.

CHEROKEE INSURANCE COMPANY,
Defendant-Appellant.

Court of Appeals of Tennessee,
Middle Section.

Aug. 25, 1972.

Certiorari Denied by Supreme Court
Nov. 6, 1972.

Goodlett, Peay & Hurt and Runyon & Runyon, Clarksville, for complainants-appellees.

Cunningham & Mitchell, Clarksville, for defendant-appellant.

## OPINION

PURYEAR, Judge.

This case is before the Court on appeal for the second time and the present appeal involves the measure of recovery in a suit to recover for loss insured against under the terms and provisions of a builder's risk insurance policy.

In addition to referring to the parties as complainants and defendant respectively, we will refer to the complainant, Shamrock Homebuilders, Inc., as "Shamrock" and to the intervening petitioners, Billy J. McGregor and wife, Sarah McGregor, as "the McGregors" and will refer to the defendant, Cherokee Insurance Company, as "Cherokee."

In December, 1967, the McGregors and Shamrock entered into an agreement by the terms of which Shamrock was to convey to the McGregors a certain lot or parcel of land situated in the Third Civil District of Montgomery County, Tennessee, being Lot No. 29, Section A, on the plan of North Haven Subdivision.

At that time, Shamrock was building a house upon said land and it was agreed that the house would be completed by Shamrock and possession thereof delivered to the McGregors.

On December 19, 1967, Shamrock executed a deed conveying said property to the McGregors and this deed was placed of record in the Register's Office of Montgomery County, Tennessee.

Theretofore, on June 2, 1967, Shamrock Homebuilders had obtained a loan on said property from Home Federal Savings and Loan Association of Nashville, Tennessee, and executed a deed of trust to secure payment of it. When the McGregors later purchased the property, this deed of trust was released and the McGregors obtained another loan through the Veteran's Administration.

The McGregors never did take possession of the house, but on January 3, 1968, they obtained the key thereto from Shamrock, and upon going there, discovered that the house had suffered severe damage by reason of frozen waterpipes which had burst and flooded the house, damaging the walls, ceilings and floors quite extensively.

The McGregors then refused to accept the house and filed suit in Montgomery County Chancery Court, as a result of which it was adjudged and decreed that the sale of the property to the McGregors had not been completed when the damage occurred and that the McGregors were entitled to recover damages from Shamrock and were also entitled to a cancellation of the contract and recission of the deed.

Theretofore, on or about March 27, 1967, Cherokee had issued to Shamrock a builder's risk insurance policy containing a job site limitation of liability in the sum of $30,000.00 and the property later sold or agreed to be sold to the McGregors was designated therein as premises insured un-

der said builder's risk insurance policy, which contains the following insuring clause:

"1. This policy insures materials, machinery, equipment and supplies, the property of the Assured or for which the Assured is legally liable, to be used in the construction, installation or erection of Private Residences situated as reported in State of Tennessee while there awaiting and during their construction, installation or erection and while in due course of transportation within the limits of the Continental United States (excluding Alaska) and Canada."

\*   \*   \*   \*   \*   \*

"6.   PERILS INSURED:

This policy insures against all risks of direct physical loss of or damage to the property insured from any external cause except as otherwise provided herein." (Tr. p. 13)

Therefore, by this policy, Cherokee insured Shamrock against all risks of loss or damage to said property except those risks specifically excluded by the exclusion clauses set forth therein.

The policy also contains the following provision upon which Cherokee relied as its principal defense in the first appeal:

"Coverage shall cease when the interest of the Assured ceases or when the property has been accepted by the owner, purchaser, or when this policy has expired or been cancelled, whichever shall first occur."

When the suit of the McGregors was filed, Shamrock's attorneys notified Cherokee of the claim of the McGregors and of the fact that Shamrock was making its claim against Cherokee under the insurance policy.

There was correspondence between Shamrock and Cherokee with respect to these claims, included in which was a letter of May 5, 1968, from adjusters for Cherokee addressed to attorneys for Shamrock, to the effect that, in view of the fact that the McGregors had bought the property, the builder's risk policy afforded no coverage for the damage. On May 29, 1968, the attorneys for Shamrock wrote the adjusters for Cherokee acknowledging receipt of the foregoing letter.

Thereafter, on November 18, 1968, Chancery Court sustained the bill which the McGregors had filed against Shamrock and held that the sale of the property had not been completed and also awarded damages to the McGregors.

A letter dated November 29, 1968, from Shamrock's attorneys written to Cherokee, further demanded that Cherokee repay the loss, and, thereafter, on December 6, 1968, Cherokee's adjusters wrote Shamrock's attorneys acknowledging receipt of said letter and stating that they would further investigate the matter to determine whether they would acknowledge liability or not, and that they expected to have this investigation completed within ten days.

It was not until March 10, 1969, that the decree of the Chancery Court in favor of the McGregors against Shamrock was entered and, thereafter, on March 25, 1969, attorneys for Shamrock wrote Cherokee's adjusters to notify them of the decree and of the fact that Shamrock did not intend to appeal therefrom.

However, Cherokee continued to deny liability and thereafter on May 21, 1969, the instant suit was filed.

On June 9, 1969, the McGregors filed an intervening petition in the instant suit seeking subrogation to the extent they were entitled by reason of their recovery against Shamrock in that suit.

On November 21, 1969, the Chancellor filed a memorandum opinion in the instant suit in which he held that Shamrock was entitled to recover from Cherokee and the

following decree was entered on December 5, 1969:

"This cause came on to be further heard before Honorable W. M. Leech on the original bill, the intervening petition, the pleadings on behalf of Defendant, the order heretofore entered, and upon the entire record.

For convenience, the parties to this suit will be referred to as Shamrock, original Complainant, Cherokee, Defendant, and McGregor, Intervening Petitioners.

The Court finds that McGregor cannot maintain its action because of lack of privity insofar as the action was brought against Cherokee, and to this extent, Cherokee's plea is sustained; however, the Court finds that McGregor does, in fact, have an interest in the proceeds of the insurance policy in question.

The allegations having been sustained, the Court finds that the original bill of Shamrock should be, and in all respects and matters is hereby, sustained, and the Intervening Petition is sustained as a claim for subrogation to the extent of the amount due McGregor, all as reflected in the cause of Billy J. McGregor, et ux vs. Shamrock Homebuilders, Inc., et al.

Further, the memorandum opinion in this cause is adopted by reference as a part of this decree just as fully as if copied herein.

This matter is referred to the Clerk and Master who is to ascertain the amount of loss sustained by Shamrock and to ascertain the amount to which McGregor is entitled to be subrogated.

To this Order, Defendant takes exception and prays an appeal to the Court of Appeals for the Middle District of Tennessee, at Nashville." (Tr. pp. 120, 121)

From the foregoing decree, Cherokee perfected its first appeal to this Court and on June 26, 1970, this Court affirmed said decree of the Chancery Court.

Thereafter, certiorari was granted by the Supreme Court and that Court affirmed the decree of the Chancery Court on April 5, 1971, in the case of Shamrock Homebuilders, Inc. v. Cherokee Ins. Company, Tenn., 466 S.W.2d 204.

In concluding its opinion, the Supreme Court said:

"We therefore affirm the decree of the Chancery Court and remand the cause for such further action as may be required for its enforcement." (Supra, pp. 206, 207)

At some point during the proceedings in Chancery Court the house and lot were sold by agreement of the parties and the proceeds of sale applied to the indebtedness due thereon.

Upon remand to Chancery Court, the order of reference heretofore entered was executed by the Clerk and Master who filed a report on August 9, 1971, ascertaining Shamrock's loss as follows:

(1) Payments made by the McGregors through August 19, 1971, for purchase of the property and payments on the loan totalling $5,927.95 as of said date with interest on said payments for which McGregor had obtained judgment against Shamrock and was entitled to be subrogated.

(2) The amount due the holder of said note, after crediting the payments made by the McGregors and the net proceeds from the sale of said property, which had theretofore been sold by consent of the parties, leaving a balance of $4,396.58 as of August 31, 1971, and (3) an attorney's fee of $900.-00 to John Peay for legal services rendered on behalf of Shamrock in the suit brought against it by the McGregors.

Exceptions to said report were filed by Cherokee, which report and exceptions thereto were considered by the Chancellor, whereupon the exceptions were overruled and the Master's report was confirmed.

On September 23, 1971, a decree was entered confirming the Master's report and

**552**

from this decree, Cherokee has prayed and perfected its appeal which is now before us and the following assignments of error have been filed:

I

"The Chancellor erred in confirming the Clerk and Master's report determining the amount of Shamrock's loss for which Cherokee is liable under the builder's risk policy of insurance issued by it to Shamrock to be (1) the amount of the payments made by the McGregors for the purchase of the property from Shamrock and on the note executed by them for such purchase for which they were held liable and obligated to pay in a prior suit in which they recovered judgment against Shamrock for the same, plus interest, (2) the balance owing on said note after crediting the payments made thereon by the McGregors and the net proceeds of sale of said property under order of the Court, plus interest, and (3) an attorney fee to Shamrock's attorney for services rendered on Shamrock's behalf in defending the suit brought by the McGregors, and in rendering a decree against Cherokee for said amounts.

II

The Chancellor erred in finding and holding that (1) Cherokee 'wrongfully' refused to defend the suit brought against Shamrock by McGregor, (2) this cause is an action for breach of contract, and (3) the damages recoverable from Cherokee under the builder's risk policy issued by it to Shamrock are not limited to the terms of said policy."

Both of these assignments will be considered together instead of seriatim because they raise such closely related questions that it is not practical to consider and discuss one without considering and discussing the other.

The basic question to be settled concerns the obligations assumed by the insurer, Cherokee, to the assured Shamrock.

According to the policy, a copy of which appears in the record, Cherokee insured ". . . materials, machinery, equipment and supplies, the property of the Assured or for which the Assured is legally liable, to be used in the construction, installation or erection of . . . ." a private residence to be constructed or about to be constructed on Lot 29, Section A, of North Haven Subdivision in the Third Civil District of Montgomery County, Tennessee.

According to exclusion provisions of such policy, the loss or damage which occurred as a result of frozen and ruptured water pipes was not excluded.

Nowhere in the policy does Cherokee agree to pay any judgment which may be rendered against Shamrock for its negligence or to defend it in any action which may be instituted for the purpose of recovering such a judgment.

The only provision in the policy which even remotely approaches this subject is the following:

"If legal proceedings be taken to enforce a claim against the Assured as respects any such loss or damage, this Company reserves the right at its option without expense to the Assured, to conduct and control the defense on behalf of and in the name of the Assured." (Tr. p. 75.)

A similar provision was in the insurance policy considered by this Court in Haun v. Guaranty Security Ins. Co. (1969), Tenn. App., 453 S.W.2d 84, and it was held in that case that the insurer was not required to defend a suit filed against the insured to recover for the loss insured against.

It has been held that words used in a contract of insurance must be interpreted according to the ordinary, plain, natural and popular sense and meaning of their terms. Smithart v. Hancock (1934), 167 Tenn. 513, 71 S.W.2d 1059; Favazza v. New York Life Ins. Co. (1934), 168 Tenn. 315, 77 S.W.2d 812; Artress v. State Farm Fire & Cas. Co. (1967), 221 Tenn. 636, 429 S.W.2d 430; Swindler v. St. Paul Marine

Fire Ins. Co. (1969), 223 Tenn. 304, 444 S.W.2d 147; Stone v. Liberty Mutual Ins. Co. (1965), 55 Tenn.App. 189, 397 S.W.2d 411.

Considering the language of such insurance policy in this light, we are convinced that it is one of indemnity instead of one that insures against liability.

In Haun v. Guaranty Security Ins. Co., supra, this Court had occasion to determine whether an insurance policy was one of indemnity or liability and in that case the Court said:

"Since the policy under consideration here is one of indemnity and not a policy of liability insurance, such as the standard policy of liability insurance issued to owners and operators of motor vehicles, no obligation arises on the part of the insurance company under such an indemnity policy to defend the suit against the insured and no relationship of trust arises requiring the insurer to exercise any function in protecting the interest of its insured, except to reimburse the insured for loss sustained and paid by the insured, *provided such loss is covered by the terms of the policy of indemnity."* (emphasis supplied)    (453 S.W.2d, supra, p. 95)

However, Shamrock and the McGregors insist that this is not a suit to recover under the contract of insurance, but is a suit to recover damages for breach of such contract.

The Chancellor found merit in this insistence and said in his memorandum opinion "The instant case is for breach of contract and the damages are not limited to the terms of the insurance policy . . . . . ."

With this conclusion of the Chancellor we cannot agree. If this rationale should be indulged to its ultimate conclusion, any suit against an insurer to recover under the terms of an indemnity policy could be designated by a pleader as a suit to recover damages for breach of contract and thereby have the possible effect of making a new or different contract which the parties never intended to make.

When we follow that fundamental equitable principle that "Equity heeds not forms, but strives to reach the substance of things," we conclude that this is a suit to recover loss under the terms and provisions of a contract of indemnity insurance.

Liability insurance policies, being quite different in substance from indemnity policies, are not subject to the limitations imposed in Haun, supra.

In that case, we pointed out this difference in the following language:

"In several Tennessee cases, recovery has been awarded in favor of the insured and against the insurer for amounts in excess of policy limits of liability insurance policies. Southern Fire & Gas Co. v. Norris, 35 Tenn.App. 657, 250 S.W.2d 785 (1952); Tennessee Farmers Mutual Ins. Co. v. Hammond, 43 Tenn.App. 62, 306 S.W.2d 13 (1957).

However, it appears that recovery in such cases for amounts in excess of policy limits has been grounded upon the principles that an insurer assuming under its policy to control litigation against the insured must act in good faith and with reasonable diligence and caution; that the relationship between such an insured and his insurer under a liability policy is one of trust calling for reciprocity of action in that the insured owes the duty of full cooperation and the insurer owes the duty of exercising good faith and diligence in protecting the interest of its insured."    (453 S.W.2d, supra, p. 95)

Even if we should agree, for the sake of argument, that the instant suit is for damages for breach of contract, we could not affirm the trial Court's decree.

Baker v. Riverside Church of God (1970), Tenn.App., 453 S.W.2d 801, was a case in which damages for personal inju-

ries were awarded by the trial Court for breach of a contract whereby the church agreed to furnish plaintiff the assistance he needed to fell a tree on the church property. Plaintiff insisted that his injury resulted from the church's breach of its agreement to furnish necessary assistance pursuant to its contract.

In reversing the trial Court, this Court said:

" 'As a general rule, sometimes expressed in statutory enactments, the damages to which one party to a contract is entitled because of a breach thereof by the other are such as arise naturally from the breach itself, or such as may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof, or, as sometimes stated, such as were reasonably foreseeable and within the contemplation of the parties at the time they made the contract.

Conversely, damages which do not arise naturally from a breach of the contract, or which are not within the reasonable contemplation of the parties, are not recoverable. The promisor is not required to compensate the injured party for injuries which the promisor, when he made the contract, had no reason to foresee as the probable result of this breach.' Vol. 25 C.J.S. Damages § 24a, pp. 662–667

Perhaps the most elaborate and best reasoned statement of the rule was made long ago by the Supreme Judicial Court of Massachusetts in Squire et al. v. Western Union Telegraph Co. (1867), 98 Mass. 232:

'A party who has failed to fulfil a contract cannot be held liable for remote, contingent and uncertain consequences, or for speculative or possible results which may have ensued on his breach of duty, although they may be traceable to that cause. The reason is, that damages of such a nature are not the natural or necessary incidents of a contract, and cannot be deemed to have been within the contemplation of parties when they agreed together. A rule of damages which should embrace within its scope all the consequences which might be shown to have resulted from a failure or omission to perform a stipulated duty or service would be a serious hindrance to the operations of commerce and to the transaction of the common business life. The effect would often be to impose a liability wholly disproportionate to the nature of the act or service which a party had bound himself to perform and to the compensation paid and received therefor.' Supra, p. 237." (453 S.W.2d, supra pp. 809, 810)

To put it in the simplest language possible, the measure of damages recoverable for breach of the contract under consideration here (builder's risk policy) is fixed by the contract itself, to wit: the "direct physical loss of or damage" to the dwelling house constructed by Shamrock on Lot 29, Section A, of North Haven Subdivision in Montgomery County, Tennessee.

Obviously, the parties to said contract of insurance did not, at the time said policy was issued, contemplate the elements of damage considered and awarded by the trial Court in the instant case.

With particular reference to the attorney's fee of $900.00 awarded as an element of damage, we note that the policy contains the following provision:

"In no event shall this company be liable for legal expenses incurred by the assured without the company's prior written consent."

It is not even insisted that Shamrock had Cherokee's consent to incur any legal expenses on its behalf.

It is also significant that the policy contains the following provision:

"4. Valuation. The company shall not be liable beyond the actual cash value of

the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, *and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.*" (emphasis supplied) (Tr. p. 76)

Therefore, we have concluded that the recovery in this case must be limited to the direct physical loss or damage to the dwelling house caused by frozen pipes and water therefrom on or about January 2, 1968, together with interest thereon from date of loss or damage, but subject, however, to a deduction of $50.00 as provided in the deductible clause in the policy.

The assignments of error are sustained and the case remanded to the trial Court for further proceedings consistent with this opinion. The costs of this appeal will be paid by Shamrock and the McGregors and the costs incurred in the trial Court will abide the discretion of the Chancellor.

SHRIVER, P. J., and TODD, J., concur.