James A. ROGERS, Administrator of the Estate of William Harvey Rogers, deceased, Plaintiff-Appellant,

v.

TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Supreme Court of Tennessee.

Aug. 24, 1981.

Robert L. Ogle, Jr., Donna J. Orr, Sevierville, for plaintiff-appellant.

Andrew Johnson, John T. Johnson, Jr., Knoxville (Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, of counsel), for defendant-appellee.

## OPINION

HARBISON, Chief Justice.

Although originally involving other parties and issues, on appeal this case presents a claim by an administrator against the uninsured motorist carrier of his decedent, James A. Rogers. Decedent was killed in an accident on August 21, 1976, while riding in a vehicle being driven by Mrs. Betty J. Haynes. That vehicle was struck by an automobile owned by Deborah Burchfield and being driven by Earl Cutshaw, Jr. In the accident fatal injuries were received by Mrs. Haynes and Cutshaw as well as by decedent Rogers. Other persons were also killed or injured, and multiple claims were filed against the personal representative of Cutshaw. Appellant, plaintiff in the present case, obtained a judgment against the estate of Cutshaw in the amount of $50,000. Appellant's action against Mrs. Haynes was dismissed.

On behalf of other persons injured or killed in the accident, other judgments were rendered against the estate of Cutshaw. The vehicle which he was driving was covered by a liability insurance policy issued by Continental Insurance Company with limits of $10,000 for single bodily injury and $20,000 for all personal injuries in an accident. This insurance carrier paid its policy limits into court, and those limits were prorated among the various claimants. Appellant actually received $2,300 as his proportionate share of the insurance coverage on the vehicle driven by Cutshaw.

Appellant impleaded the uninsured motorist carrier of the decedent pursuant to T.C.A. § 56-7-1206, making claim under both the uninsured and the underinsured statutes and policy provisions. The policy held by decedent with his own carrier, appellee here, provided liability coverage with limits of $20,000 per person and $40,000 for an accident but only $10,000 per person and $20,000 per accident uninsured motorist coverage. Appellant insists that he is entitled to recover from appellee the sum of $7,700, being the difference between the amount appellant received from the liability coverage on the tortfeasor and the uninsured motorist coverage on the Rogers vehicle. Both the trial court and the Court of Appeals denied recovery.

One of the principal claims of appellant rests upon the uninsured motorist statutes and policy provisions. He insists that because he recovered less than the minimum

amount required by the financial responsibility law from the tortfeasor, the latter should be considered "uninsured" to the extent of the deficiency. He relies primarily upon the purpose and scope of the uninsured motorist statutes as stated in a number of opinions construing them.

The difficulty with the claim of appellant, insofar as the statutes are concerned, is that the driver of the offending vehicle was covered by liability insurance which met the requirements of the financial responsibility law, T.C.A. § 55–12–107.

The uninsured motorist statutes contain a very limited definition of the term "uninsured motor vehicle," T.C.A. § 56–7–1202, involving insolvent liability insurance carriers. That definition has no application here. Otherwise the term is undefined in these statutes, but the insurance requirements of the financial responsibility law are found in T.C.A. § 55–12–107 which is referred to in the uninsured motorist provisions.

The basic uninsured motorist statute, T.C.A. § 56–7–1201, requires that no automobile liability insurance policy covering a vehicle principally garaged in this state shall be issued

> unless coverage is provided therein or supplemental thereto, in not less than limits for bodily injury or death described

in § 55–12–107, subject to provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom
> . . . . "

There is no question but that appellee furnished such coverage to its insured, the decedent Rogers. However, it is stipulated that the tortfeasor, Cutshaw, was operating a vehicle with the minimum policy limits required by T.C.A. § 55–12–107. Under these circumstances, in our opinion, it would be a strained interpretation of the statutes to hold that the driver of the Cutshaw vehicle was operating an "uninsured motor vehicle."

Insofar as our research discloses, two states have so construed their statutes,[1] but twenty-five others, in ruling upon this frequently-litigated question, have declined to define an otherwise insured vehicle as uninsured because a particular claimant did not actually receive the minimum amount specified in a financial responsibility law.[2] That fact does not render the offending vehicle uninsured or in violation of the statutory insurance requirements. All that the Tennessee statutes require, in order that a vehicle comply with the financial responsibility

1. *Porter v. Empire Fire and Marine Ins. Co.*, 106 Ariz. 274, 475 P.2d 258 (1970); *Palisbo v. Hawaiian Ins. & Guar. Co.*, 57 Haw. 10, 547 P.2d 1350 (1976).

2. *Criterion Ins. Co. v. Anderson*, 347 So.2d 384 (Ala.1977); *Travelers Ins. Co. v. Bouzer*, 39 Cal.App.3d 992, 114 Cal.Rptr. 651 (1974); *Simonette v. Great American Ins. Co.*, 165 Conn. 466, 338 A.2d 453 (1973); *Golphin v. Home Indemnity Co.*, 284 So.2d 442 (Fla.App.1973); *Hughes v. Cotton States Mut. Ins. Co.*, 146 Ga.App. 117, 245 S.E.2d 466 (1978); *Ripley Resin Eng'r Co. v. Great American Ins. Co.*, 70 Ill.App.3d 619, 27 Ill.Dec. 209, 388 N.E.2d 1258 (1979); *Detrick v. Aetna Cas. & Sur. Co.*, 261 Iowa 1246, 158 N.W.2d 99 (1968); *Wren v. Ohio Cas. Ins. Co.*, 535 S.W.2d 849 (Ky.1976); *Richard v. Zurich Ins. Co.*, 318 So.2d 83 (La. App.1975); *Saari v. State Farm Mut. Auto Ins. Co.*, 72 Mich.App. 278 249 N.W.2d 390 (1976); *Thiry v. Horace Mann Mut. Ins. Co.*, 269 N.W.2d 66 (Minn.1978); *McMinn v. New*

Hampshire Ins. Co., 276 So.2d 682 (Miss.1973); *Brake v. MFA Mut. Ins. Co.*, 525 S.W.2d 109 (Mo.App.) *cert. denied*, 423 U.S. 894, 96 S.Ct. 192, 46 L.Ed.2d 126 (1975); *Emery v. State Farm Mut. Ins. Co.*, 195 Neb. 619, 239 N.W.2d 798 (1976); *Peacock v. Harper*, 600 P.2d 223, 225 (Nev.1979); *Allstate Ins. Co. v. O'Shaughnessey*, 118 N.H. 66, 384 A.2d 486 (1978); *Gorton v. Reliance Ins. Co.*, 77 N.J. 563, 391 A.2d 1219 (1978); *Tucker v. Peerless Ins. Co.*, 41 N.C.App. 302, 254 S.E.2d 656 (1979); *Shelby Mut. Ins. Co. v. Smith*, 45 Ohio St.2d 66, 341 N.E.2d 597 (1976); *Simmons v. Hartford Acc. & Indem. Co.*, 543 P.2d 1384 (Okl.1975); *Lund v. Mission Ins. Co.*, 270 Or. 461, 528 P.2d 78 (1974); *Ziegelmayer v. Allstate Ins. Co.*, 403 A.2d 653 (R.I.1979); *Kemp v. Fidelity & Casualty Co. of New York*, 512 S.W.2d 688 (Tex. 1974); *Tudor v. Allstate Ins. Co.*, 216 Va. 918, 224 S.E.2d 156 (1976); *Strunk v. State Farm Mut. Auto Ins. Co.*, 90 Wash.2d 210, 580 P.2d 622 (1978).

law, is that it or its operator be covered with limits in at least the amount specified in T.C.A. § 55–12–107.

Appellant insists that this construction of the statutes is harsh and that his decedent would have fared better if he had been struck by a totally uninsured vehicle. Even if this be true, it does not change the meaning of the applicable statutes or of the insurance contract.

As stated by appellant, there is language in some of the Tennessee cases construing the uninsured motorist statutes to the effect that the purpose of those statutes is to provide protection up to the minimum statutory limits for bodily injuries which the claimant would have received had he been injured by an insured motorist. *See Shoffner v. State Farm Mutual Automobile Insurance Co.*, 494 S.W.2d 756, 758 (Tenn. 1972). The holding in that case, however, made it clear that the statutes were not designed to provide an individual with any greater protection than would have been available had he been injured by an insured motorist. In the present case decedent was so injured and he has received all of the insurance available to that insured motorist under the circumstances. We believe that it would be a distortion of previous cases and of the statutes in question, including the financial responsibility law, to place within the uninsured motorist coverage a vehicle covered by valid and collectible liability insurance with limits complying with the financial responsibility statutes.

This Court has discussed in many previous decisions the purposes and policy of the uninsured motorist statutes, and we see no need to repeat that discussion here. Previous cases make it clear that Tennessee has not adopted a "broad form" of uninsured motorist coverage. Exclusions and restrictions on coverage have been sustained in numerous cases. *See e. g., Hill v. Nationwide Mutual Insurance Co.*, 535 S.W.2d 327 (Tenn.1976), in which an argument similar to that advanced by appellant was rejected. There the claimant would have been covered by his father's uninsured motorist policy

except that it excluded the operation of other owned but unlisted vehicles. There, as here, it was argued that the claimant would have fared better had he been injured while walking as a pedestrian or while operating a non-owned vehicle. The policy provisions in that case, however, were held to be consistent with the statutes and to preclude coverage to the particular claimant.

As stated, the Tennessee statutes themselves contain little by way of definition of the words "uninsured motor vehicle." The policy covering decedent in this case, however, appears to be a standard form contract which does contain a definition of the term "uninsured automobile." In addition to including vehicles covered by insolvent liability carriers, the policy defines an uninsured automobile as being:

"(1) an automobile with respect to the ownership, maintenance or use of which there is, in at least the amount specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury or property damage liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury or property damage liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder; . . ."

Again, since the vehicle which injured decedent did have applicable limits "in at least the amount specified by the financial responsibility law of the state in which the insured automobile is principally garaged," the offending vehicle cannot be deemed to be "uninsured" within the policy provisions. Nor do we find any discrepancy between the policy definition and the statutes.[3]

After careful consideration, we are of the opinion that appellant's claim insofar as it is based upon the uninsured motorist statutes or policy provisions cannot be sus-

---

3.  *See* Note, *Underinsured Motorist Coverage in Tennessee*, 43 *Tenn.L.Rev.* 663, 665 (1976).

tained because the vehicle which injured him was insured in accordance with applicable state law.

■ Appellant insists, in the alternative, that he is entitled to recover under the "underinsured" motorist statutes as enacted in 1974. Again, however, appellant's case does not fall within the terms of these statutes, and there are no policy provisions cited or relied upon which might provide coverage in addition to that authorized or prescribed by the statutes.

In 1974 T.C.A. § 56–7–1201 was amended by adding requirements that any insured purchasing uninsured motorist coverage

"shall be provided an opportunity to also purchase uninsured motorist insurance limits greater in amount than the requirements of § 55–12–107."

The difficulty with appellant's position in this regard is that his decedent did not purchase such limits. He only purchased uninsured motorist coverage limits in the minimum amounts required by T.C.A. § 55–12–107, that is $10,000 per person and $20,000 per accident. Therefore there is no "underinsured" insurance question presented. Had the decedent purchased uninsured motorist coverage with limits equal to his liability insurance coverage, $20,000 per person and $40,000 per accident, then, of course, his administrator would be entitled to recover from his own carrier in this case. Since he did not purchase such excess coverage, however, there is no differential in coverage provided by the policies on the tortfeasor and on the decedent.

The 1974 statute provided that the carrier was not required to furnish to an insured greater limits of uninsured motorist coverage than the bodily injury limits contained in his liability coverage. The statute initially defined "underinsured motorist" as:

" . . . the operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability

under the insured's uninsured motorist coverage . . . ."

As stated, there is no such differential in this case.

Appellant contends, however, that the tortfeasor actually had effective insurance of only $2,300 insofar as the decedent Rogers was concerned and that the remainder of his coverage was theoretical or "paper" insurance as to Rogers. Accordingly he insists that $2,300 constituted the "insurance applicable at the time of the accident" and that he is entitled to recover the difference between the amount actually received from the tortfeasor and the uninsured motorist limits carried by decedent.

If that were an arguable construction of the statutory provisions originally enacted, the General Assembly seemingly indicated that it did not so interpret them in 1977. It then adopted an amendment dealing with the "per passenger" insurance proceeds actually received from a tortfeasor in cases involving multiple passengers in certain types of vehicles. The amendment provides:

"provided that, the 'per person' limit of the insured's uninsured motorist coverage shall apply to the insured and/or to a member of his/her immediate family while an occupant in a cooperative use vehicle where the insured's uninsured motorist coverage is greater than the 'per passenger' share of all applicable liability insurance available at the time of the accident, and the limits of such applicable liability insurance have been exhausted by the payment of judgments or settlements." T.C.A. § 56–7–1201.

Had this provision not been limited to passengers in "cooperative use" vehicles, it might benefit claimants having individual uninsured motorist protection where the liability insurance applicable to the tortfeasor has been exhausted by the payment of multiple judgments or settlements. The term "cooperative use vehicle," however, was defined in the amending statute [4] as a vehicle designed to carry passengers and used to

---

4. 1977 Tenn.Pub. Acts, ch. 359, § 2.

carry not more than eighteen "share-ride passengers on a share expense (full cost) and/or sharing driving and/or gratuitous basis." [5]

Since the tortfeasor's vehicle in the present case was not a "cooperative use" vehicle, the expanded coverage afforded by the 1977 amendment is not applicable. Further, as noted previously, the accident in the present case occurred in 1976, prior to the enactment of this amendment. That enactment, however, seems to make clear that the phrase "insurance applicable at the time of the accident," as used in the original statute, referred to the limits provided by the policy covering the tortfeasor and not to the amount actually received by a particular claimant. Otherwise the 1977 amendment would have been redundant and unnecessary.

We are of the opinion that the decisions of the trial court and Court of Appeals in this case were correct. Their judgments are affirmed at the cost of appellant.

COOPER and DROWOTA, JJ., concur.

FONES and BROCK, JJ., file separate dissenting opinions.

FONES, Justice, dissenting.

I agree with the results reached in the dissenting opinion of Mr. Justice Brock.

I find nothing in the uninsured motorist statutes or our present case law that prevents this Court from expanding the definition of uninsured motorist to embrace all situations where other insurance or benefits of any kind pay less than the statutory minimum under the financial responsibility law.

In the unreported case, *Sessler, et al. v. Story, et al.,* released November 29, 1976 at Nashville, the plaintiff had uninsured motorist coverage in two separate policies containing identical "other insurance" provisions, that made each policy "excess" insurance only, over any other similar insurance

available. For some reason not revealed in that record, plaintiff had settled with one of the uninsured motorist carriers for five thousand dollars and was suing the other carrier for five thousand dollars. Relying upon the same quotation from *Terry v. Aetna Casualty and Surety Company,* 510 S.W.2d 509 (Tenn.1974) quoted by Mr. Justice Brock in his dissent, we allowed recovery against the defendant insurance company upon the following rationale:

"Here, we are confronted with the factual situation that an insured is covered by two policies with identical uninsured motorists provisions and the insureds carrier seeks the protection of a policy provision that would limit its insured to one-half the statutory minimum of $10,000. We think that result is in conflict with the purpose of the legislature in mandating uninsured motorist coverage. It follows that the first paragraph of the 'other insurance' provision, declaring the Story's policy to be excess insurance must yield to the statutory purpose." *Sessler, et al. v. Story, et al.,* pp. 4–5.

The result in this case is clearly in conflict with the statutory purpose we declared in *Sessler,* and I think that statutory purpose is equally applicable to this factual situation and requires a judgment in favor of the plaintiff for $7,700.

BROCK, Justice, dissenting.

I respectfully dissent.

I agree with the majority's interpretation of prior case law that "Tennessee has not adopted a 'broad form' of uninsured motorist coverage." However, in my view the uninsured motorist issue in the case at bar does not turn on that conclusion. While I agree with the overall validity of certain exclusions and restrictions contained in uninsured motorist policies,[1] I am of the opinion that in this case our focus should be on the overall purpose of the act.

---

5.  T.C.A. § 56–7–1301(3).

1.  *See, e. g., Hill v. Nationwide Mut. Ins. Co.,* 535 S.W.2d 327 (Tenn.1976) and *Terry v. Aetna*

*Casualty and Surety Company,* 510 S.W.2d 509 (Tenn.1974).

I would concede that the policy covering the decedent in this case gives a restrictive definition of an uninsured automobile; but, unlike the restrictions and exclusions that this Court has refused to find invalid, the definition of an uninsured motorist can be gleaned from the statutes. Obviously, the definition is sketchy and ambiguous but, nevertheless, because this Court is confronted with a legislative mandate on the subject, insurance policy definitions should not be allowed to control the outcome of this case. *Contra: Stone v. Liberty Mutual Insurance Company*, 397 S.W.2d 411 (Tenn. App.1965).

T.C.A., § 56–7–1201, begins by mandating that all automobile liability insurance policies issued in this state must contain uninsured motorist coverage in an amount not less than that required by the financial responsibility law, unless the insured rejects such coverage. The statute states that the purpose of this coverage is "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." In my opinion the majority's interpretation of the statute does not effectuate the avowed legislative purpose of protecting the citizens of this state.

Moreover, the statute does not make good sense if it is interpreted to prevent a recovery up to the limits set by the financial responsibility law in this case. The decedent Rogers paid a premium for uninsured motorist coverage of $10,000 per person and $20,000 per accident, yet his estate has received only $2,300 from all insurance sources. The decedent would have been in a better position had he been injured by a tortfeasor with no insurance whatsoever. While the majority concedes that this result may be harsh they do not explain how such

a construction squares with the legislative purpose.

With respect to the underinsured coverage issue in this case the majority acknowledges that "[h]ad the decedent purchased uninsured motorist coverage with limits equal to his liability insurance coverage, $20,000 per person and $40,000 per accident, then, of course, his administrator would be entitled to recover from his own carrier in this case." Upon scrutiny this construction would have allowed the decedent's estate to recover $7,701 from his own uninsured motorist coverage had he paid the premium for $1 more of insurance! I do not believe the General Assembly intended such a result.

Beyond the mere equities of this case and aside from common sense, I would contend that a contrary position is supported by our case law. The majority cites *Shoffner v. State Farm Mutual Automobile Ins. Co.*, 494 S.W.2d 756 (Tenn.1972), for the proposition that the statutory scheme was "not designed to provide an individual with any greater protection than would have been available had he been injured by an insured motorist." However, the majority also points out that *Shoffner* contains language to the effect that the purpose of the act is to provide protection up to the minimum statutory limit.

Since *Shoffner* was decided, there have been several other cases which have addressed the difficult question of discerning the legislative purpose that prompted the enactment of the uninsured motorist statutes. In *Terry v. Aetna Casualty and Surety Co.*, 510 S.W.2d 509 (Tenn.1974), this Court construed T.C.A., § 56–7–1205,[2] and decided that insurance policies could restrict uninsured motorist coverage by way of "Other Insurance" clauses. However, in

---

**2.** T.C.A., § 56–7–1205, provides the following:

"*Minimum policy limits not increased.* —Nothing contained in §§ 56–7–1201—56–7–1206 shall be construed as requiring the forms of coverage provided pursuant to §§ 56–7–1201—56–7–1206, whether alone or in combination with similar coverage afforded under other automobile liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been

involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in § 55–12–107, or the uninsured motorist liability limits of the insured's policy if such limits are higher than the limits described in § 55–12–107. Such forms of coverage may include such terms, exclusions, limitations, conditions and offsets, which are designed to avoid duplication of insurance and other benefits."

*Terry*, Chief Justice Dyer reached that conclusion based upon the following rationale:

> "It results, and we so hold, by enactment of T.C.A. § [56–7–1205] as a section of our uninsured motorist statutes, it is the legislative purpose to provide an insured motorist a right of recovery under the uninsured motorist provisions of his policy only up to the statutory required minimum [T.C.A. § 56–7–1201], and provisions in such policies, approved by the Commissioner of Insurance, operating to reduce such coverage where other coverage or benefits are available to the insured arising from accident causing the loss, are valid *if such provisions do not operate to deny payments to an insured of less than the statutory minimum.*
>
> "Prior decisions of this Court in conflict with this opinion are modified to conform to this opinion." (Emphasis added.) 510 S.W.2d at 513–14.

In *State Automobile Mutual Ins. Co. v. Cummings*, 519 S.W.2d 773 (Tenn.1973), Justice Fones elaborated further:

> "While we do not applaud either the draftsmanship or the existence of T.C.A. § [56–7–1205], we must give it the effect that its reasonable construction demands. The Legislature has stated that nothing in the Uninsured Motorist statutes is to be construed as requiring coverage beyond the sum of $10,000, either alone or in combination with similar coverage, and has expressly authorized all policies to contain provisions to avoid duplication of insurance and other benefits.
>
> "We hold that said section must be construed as authorizing policy provisions that may validly limit the recovery of a tort victim insured by uninsured motorist coverage to a maximum collection of $10,-000 (or the policy limits) from all insurance or other benefits available to him." 519 S.W.2d at 775.

With further reference to *Shoffner*, I disagree with two basic propositions which were mentioned in that case. First, *Shoffner* implied that T.C.A., § 56–7–1205, restricts recovery pursuant to the uninsured motorist coverage to situations in which the tortfeasor is not in compliance with the financial responsibility law. On the contrary, the language of § 56–7–1205 simply prohibits the limits of such coverage from being increased beyond the limits established by the financial responsibility law if an insured never requests additional coverage; thus, a plaintiff's recovery is not expressly restricted to situations involving tortfeasors who are not in compliance with the law.

The foregoing conclusion is also the basis of my second disagreement with *Shoffner*. *Shoffner* stated that the purpose of uninsured motorist coverage is to place an insured "in as good a position as, but no better position than he would occupy if he had been injured by an individual who complied with the financial responsibility law." 494 S.W.2d at 759. The legislative purpose as I see it is to provide insurance for victims of accidents who are unable to recover insurance benefits from tortfeasors in an amount at least equal to the amount established by the financial responsibility law. The purpose stated in *Shoffner* ignores the fact that an insured pays an extra premium in order to receive coverage in the event an uninsured motorist injured him. Moreover, T.C.A., § 56–7–1201, mandates that this coverage be in an amount *at least equal* to the amount set by the financial responsibility law. As we stated in *Thaxton v. Travelers Indem. Co.*, 555 S.W.2d 718 (Tenn.1972), "[t]he insurance [uninsured motorist insurance] required by the statute is for the loss suffered by the insured, not the liability incurred by the uninsured motorist." Id. at 720. The policy owner insures himself, not the uninsured motorist. Finally, the author of *Underinsured Motorist Coverage in Tennessee*, 43 Tenn.L.Rev. 663 (1976) reached the following conclusion concerning the purpose of the statutory scheme:

> "The statutory mandate that UM coverage apply in the underinsured situation clearly indicates a legislative desire for a liberal construction. Even the 'narrow' decisions beginning with *Shoffner* conceded that a UM insured cannot be denied a minimum UM recovery. At the

next opportunity, the Tennessee courts should adopt the progressive view that unless a vehicle's liability insurance inures to plaintiff's benefit, that vehicle is to be considered uninsured for purposes of the UM Act."

Applying the foregoing reasoning to the facts at bar, I disagree with the majority's conclusion that because the tortfeasor in this case was in compliance with the financial responsibility law the victim is not entitled to recover insurance proceeds for which a premium was paid. I agree with the conclusion reached in the cited law review article that, because the tortfeasor's liability insurance did not inure to the benefit of the plaintiff in an amount equal to the financial responsibility law, T.C.A., § 56–7–1201, mandates recovery up to that amount. The overall purpose of the statute requires that result. On many occasions this Court has refused to apply the literal language of a statute when such a construction would produce a result which is contrary to the apparent legislative purpose. *See, e. g., Tidwell v. Collins*, 522 S.W.2d 674 (Tenn. 1975).

In my opinion the legislature intended that the citizens of this state should be insured up to the minimum amount established by the financial responsibility law. Thus, I would look beyond the insurance legalese contained in the statutory scheme and would allow the recovery that the purpose of the act demands.

