Nancy A. BRAKE, Plaintiff-Appellant,

v.

MFA MUTUAL INSURANCE COMPANY, a corporation, Defendant-Respondent.

No. 35893.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Feb. 25, 1975.

Motion for Rehearing or Transfer Denied April 14, 1975.

Application to Transfer Denied May 12, 1975.

Cox, Moffitt & Cox, Dallas W. Cox, Jr., St. Louis, for plaintiff-appellant.

William B. England, St. Louis, for defendant-respondent.

NORWIN D. HOUSER, Special Judge.

Silas William Brake, husband of plaintiff Nancy A. Brake, was killed in a two-car automobile collision caused solely by the negligence of Donald W. Miller. Others killed in the collision between the Brake and Miller vehicles were Miller, Harold G. Brake and one Lorance. Silas William Brake, Harold G. Brake and Lorance each left surviving a widow and several minor children. Four other persons received serious personal injuries in the collision. At time of collision Miller carried a policy of automobile liability insurance issued by Automobile Club Inter-Insurance Exchange which complied with the minimum requirements for exception from the suspension provisions of The Motor Vehicle Safety Responsibility Law, Chapter 303, § 303.030, RSMo 1969, V.A.M.S., i. e., subject to limits of $10,000 because of bodily injury to or death of one person in any one accident and $20,000 because of bodily injury to or death of two or more persons in any one accident. Miller's insurer filed an interpleader suit against twenty-one persons who had asserted claims of various kinds arising out of the negligence of Miller, and paid $20,000 (the maximum liability under the insurance policy) into the registry of the court. The court ordered the $20,000 prorated among the claimants, awarding Nancy A. Brake $2,600 for her individual claim and $1,400 for the benefit of her five minor children, and awarding sums of from $1,000 to $4,000 to other claimants. Nancy A. Brake gave a receipt but not a release for the $4,000. Her cause of action for the wrongful death of her husband and on behalf of her five children had an agreed value of $50,000.

Silas William Brake, joint owner with his wife Nancy of the automobile in which he was riding as a passenger at time of collision, had purchased and paid premiums on two policies of automobile liability insurance issued by MFA Mutual Insurance Company on two different automobiles. Each policy provided uninsured motorist coverage for Mr. Brake and his spouse in the sum of $10,000 for each person and $20,000 for each accident. Following receipt of the $4,000 Nancy A. Brake filed this suit against MFA, praying for $40,000 damages under the two insurance policies. MFA moved to dismiss the petition and for summary judgment. Plaintiff filed a countermotion for summary judgment. The parties stipulated as to the facts. Upon submission the circuit court denied plaintiff's motion for summary judgment; sustained defendant's motion for summary judgment, and rendered judgment in favor of MFA and against plaintiff. Plaintiff appealed.

The Uninsured Motorist Law, § 379.203, RSMo 1969, par. 1, V.A.M.S., requires that automobile liability insurance provide coverage "in not less than the limits for bodily injury or death set forth in section 303.030, RSMo [the Safety Responsibility Law], for the protection of persons injured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." Paragraph 2 provides: "For the purpose of this coverage, the term 'uninsured motor vehicle' shall, subject to the terms and conditions of such

coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified herein because of insolvency." Paragraph 4 gives rights of subrogation to the insurer making payment under this coverage.

The Motor Vehicle Safety Responsibility Law, Chapter 303, § 303.030, par. 5, sets the limits of the required coverage at not less than $10,000 because of bodily injury to or death of one person in any one accident, and not less than $20,000 because of bodily injury to or death of two or more persons in any one accident.

The provisions of the two MFA policies extending uninsured motorist protection to Silas William Brake and his spouse are contained in Coverage E, Part V of the identical policy forms. Paragraph I obligated MFA to "pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; * * *." Paragraph 2 defined "uninsured highway vehicle" as "a highway vehicle with respect to the ownership, maintenance or use of which there is no bodily injury * * * insurance policy applicable at the time of the accident with respect to any person * * * legally responsible for the use of such highway vehicle * * *."

The first question is whether Miller's automobile was an uninsured highway vehicle within the meaning of that term as used in Part V, Coverage E, par. I of the MFA policy.

Plaintiff contends that, as evidenced by the Uninsured Motorist Law, § 379.203, supra, there is a statutory mandate on MFA under an established public policy to pay *all sums* referred to in par. I; that every

insured such as Mrs. Brake is entitled under the uninsured motorist coverage to payment of the damages which she could have recovered had the tort-feasor maintained a policy of liability insurance in a sum sufficient to respond in damages to the extent of the $10,000 statutory minimum; that the term "uninsured motor vehicle" as used in § 379.203 is ambiguous; that it was drafted to comply with and was designed to satisfy the Safety Responsibility Law; that when considered in that frame of reference it makes no sense to extend coverage under which the insured is better off if the tort-feasor has no insurance than if he has some but not enough insurance to pay for the damages inflicted; that the courts ought to allow additional recovery under the uninsured motorist endorsement "whenever the uninsured motorist coverage exceeds the tort feasor's liability insurance and the tort feasor's insurance is insufficient to fully indemnify the claimant"; that the policy reference to uninsured motor vehicles conflicts with The Motor Vehicle Safety Responsibility Law, Chapter 303, and is void because in this case it effectively reduces the statutory minimum of $10,000 to $4,000. Plaintiff asks for a liberal construction of the language of the policy to effectuate the legislative intention that indemnity in the minimum sum of $10,000 be afforded against loss inflicted by a financially irresponsible person; contends that the coverage afforded by the Miller policy of insurance was only hypothetically or partially available to her, i. e., to the extent of $4,000 only instead of the $10,000 to which she had a legal right under the Uninsured Motorist Law; that because of the multiple claims made against Miller's $20,000 coverage the basic policy of the Uninsured Motorist Law has been frustrated; that the words "uninsured highway vehicle" should be construed to include every situation in which the tort-feasor actually has insufficient insurance "for whatever reason" to cover and pay in full all claims against him, up to the limits of the uninsured motorist protection he has purchased.

Uninsured motorist statutes are to be liberally construed to accomplish their highly remedial purpose, which is " ' "to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy." ' " Webb v. State Farm Mutual Automobile Ins. Co., 479 S.W.2d 148, 151[3] (Mo.App.1972). Under the guise of construction, however, the courts are not at liberty to extend and enlarge the scope of the Uninsured Motorist Law by declaring an insured motorist to be an uninsured motorist, unless the statute itself clearly provides an exception to cover the case. MFA's policies afford protection against injuries, etc. inflicted by an *uninsured* highway vehicle. The policies define such a vehicle as one with respect to the use of which there is *no bodily injury insurance applicable* at the time of the accident with respect to the person legally responsible for its use. The statute relates to *uninsured* motor vehicles and provides no exception which would cover the case before us. Here the tort-feasor's motor vehicle was covered by a liability insurance policy which complied with the minimum requirements of the Safety Responsibility Law.

The term "uninsured motor vehicle" as used in § 379.203, par. 1 and the term "uninsured highway vehicle" as used in the MFA policies, are not ambiguous, as claimed, but are terms of common meaning and understanding. "Un" means not. An uninsured vehicle is one which is not insured. When language is plain, straightforward and suspectible of only one meaning there is no room for judicial construction because there is nothing to construe. Swaringin v. Allstate Insurance Co., 399 S.W.2d 131, 133 (Mo.App.1966); Leggett v. Missouri State Life Ins. Co., 342 S.W.2d 833, 851 (Mo. banc 1960). Where language in an insurance policy is unambiguous and does not offend against public policy it must be accorded its plain meaning and it must be enforced as written. "For, to do otherwise would be to make a new contract for the parties * * * in contravention of the long-recognized and oft-invoked rule that '[c]ourts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties. * * *' " Kisling v. MFA Mutual Ins. Co., 399 S.W.2d 245, 253, and authorities cited.

Clearly Miller's automobile does not come within either the language of the statute ("uninsured motor vehicle") or that of the MFA policies ("uninsured highway vehicle"). Miller's vehicle was not uninsured. On the contrary, Miller owned a policy of liability insurance on his vehicle in amounts prescribed by and in full compliance with the minimum requirements of the law. Miller's automobile was insured and the insurance was applicable at the time of the accident. Plaintiff failed to sustain her burden of showing that the uninsured motorist provisions of the MFA policies afford coverage to her as a result of this accident. MFA is liable under its policies "only in those instances where the guilty tortfeasor is either uninsured or [his] insurance carrier becomes insolvent within a period of [two years after the accident] and is unable to respond to damages under its insurance policy. Such limited coverage may not be extended except by clear and unambiguous provisions of a duly enacted statute or the insurance policy sued upon. The insurance polic[ies] in the case sub judice contain no provision purporting to extend or expand the coverage beyond that required by the statute." Golphin v. Home Indemnity Co., 284 So.2d 442, 444 (Fla.App.1973).

To hold in favor of plaintiff would require the exercise by this Court of powers it does not possess, namely, to revise the statute and reconstruct the contract entered into between the parties by ruling that an "uninsured" vehicle includes an insured vehicle, in a situation not covered by the Un-

insured Motorist Law, viz., where the liability insurer is unable to make full payment with respect to the legal liability of its insured within the specified limits because due to a multiplicity of claims arising out of a single accident the limited proceeds of the policy must be divided among and distributed to several claimants on a pro rata basis. This we decline to do.

If the General Assembly had intended that the term "uninsured motor vehicle" cover this situation it would have so provided in § 379.203. The lawmakers made one exception, by providing in par. 2 that the term "uninsured motor vehicle" includes an insured motor vehicle where the liability insurer becomes insolvent. That exception, however, does not cover this case. No exception was made by the General Assembly for the protection of an injured party where multiple claims reduce his participation in the proceeds of the tort-feasor's policy. There are several other conceivable fact situations in which the general public policy of the Uninsured Motorist Law may be frustrated but for which the General Assembly has made no provision. For instance, where the tort-feasor's insurer denies liability; where the tort-feasor's policy is issued in an amount less than the limits prescribed by the Safety Responsibility Law, or where although the tort-feasor is insured in compliance with the law and there is only one person injured the damages for which the tort-feasor is legally liable far exceed $10,000. Perhaps the General Assembly will review the advisability of further amendment of § 379.203, in the light of this case and other conceivable hardship cases, to provide broader protection under uninsured motorist coverage in specified cases. In the meantime the courts must enforce § 379.-203 as it is written.

The majority of other jurisdictions which have passed upon this and closely related situations involving uninsured motorist statutes and comparable policy provisions have come to the same conclusion we have reached. We align ourselves with the majority as exemplified by the following authorities: Travelers Ins. Co. v. Bouzer, 39 Cal.App.3d 992, 114 Cal.Rptr. 651 (1974); Villarreal v. Texas Farmers Insurance Co., 510 S.W.2d 633 (Tex.Civ. App.1974); Kemp v. Fidelity & Casualty Co. of N. Y., 504 S.W.2d 633 (Tex.Civ. App.1973); Golphin v. Home Indemnity Co., supra; Lund v. State Farm Mutual Automobile Ins. Co., 342 F.Supp. 917 (W. D.Okla.1972); Gordon v. Phoenix Ins. Co., 242 So.2d 485 (Fla.App.1970); Continental Ins. Co. v. Wallace, 233 So.2d 195 (Fla. App.1970); Smiley v. Estate of Toney, 44 Ill.2d 127, 254 N.E.2d 440 (1969); Detrick v. Aetna Casualty and Surety Co., 261 Ia. 1246, 158 N.W.2d 99 (1968).

Plaintiff relies upon Porter v. Empire Fire and Marine Ins. Co., 106 Ariz. 274, 475 P.2d 258 (banc 1970), and Kirkley v. State Farm Mutual Ins. Co., 17 Cal.App.3d 1078, 95 Cal.Rptr. 427 (1971). Porter allows recovery under uninsured motorist coverage where, although the tort-feasor is not uninsured, his insurance is not sufficient to cover multiple claims arising out of the occurrence, on the theory that otherwise the protection expected by the injured party and intended by the legislature in passing the financial responsibility laws would not be afforded; that while $10,000 is said to be available under the tort-feasor's policy of insurance it is only theoretically available to the injured party (is only "paper coverage") because actually it is subject to proration among multiple claimants. The court emphasizes that under defendant's theory the injured party would be in a better position if the tort-feasor had been totally uninsured. Although that is the anomalous result, this does not authorize a court to enlarge the meaning of words which are clear and unambiguous or write into the statute something not there. We cannot accept the reasoning of the Porter case. Nor are we persuaded by Kirkley, in which the uninsured motorist coverage was brought into play on the basis of prior California decisions holding that uninsured motorist coverage is appli-

cable where the offending vehicle is *under-insured,* that is, covered by liability insurance in an amount less than the minimum prescribed by the financial responsibility law. We cannot in good conscience hold that "uninsured" includes "underinsured." Furthermore, the policy definition of "uninsured automobile" in Kirkley is distinguishable from the language in the MFA policies before us.

In view of our holding we need not consider other points raised by appellant, namely, the question of "stacking," and whether interest runs from date of accident or date of judgment.

Judgment affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.