JAMES H. GARDNER, Appellant, *v.* THE AMERICAN INSURANCE COMPANY, Respondent.

No. 9942

April 11, 1979                                                    593 P.2d 465

*Fray and Benson,* Reno, for Appellant.

*Leggett & Hamilton,* Reno, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal by an insured, appellant James H. Gardner, from a summary judgment in favor of his insurer, The American Insurance Company (American), dismissing his complaint. Gardner seeks recovery from American, pursuant to the uninsured motorist provision of his insurance policy, on the ground that his recovery from the statutory per accident limit made available by a tortfeasor's insurer, when divided among five claimants injured in the same accident, will be inadequate to compensate him for damages he is entitled to recover from the tortfeasor.

## THE FACTS

Gardner was injured on February 22, 1975, when his automobile was struck by a vehicle operated by Ian McFarlane. Three passengers in McFarlane's car were also injured, and a fourth was killed. Gardner subsequently collected benefits pursuant to the personal injury (no-fault) provisions of his insurance policy with American. He has, in addition, been adjudged entitled to recover $13,000 from McFarlane, as noneconomic detriment. *See* NRS 698.120.[1] Gardner's policy with American provides that, to a limit of $15,000 per person or $30,000 per accident, American will "pay all sums which the insured or his legal representative shall be legally entitled to recover as [personal injury] damages from the owner or operator of an uninsured automobile," which is further defined as one with respect to which there is "in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident. . . ." McFarlane was insured, at the time of the accident, for personal injury liability in the minimun amounts required by

---

[1] NRS 698.120 provides:

" 'Noneconomic detriment' means pain, suffering, inconvenience, physical impairment and other nonpecuniary damage recoverable under the tort law of this state."

Nevada's financial responsibility statute, i.e., $15,000 per person or $30,000 per accident.[2] At the time this appeal was filed, McFarlane's insurer had filed an interpleader action, and had placed $30,000 on deposit with the court, for division among Gardner and the four other claimants.[3] It is Gardner's position that because he will be unable to collect, as his share of the $30,000 available, the full $13,000 to which he is entitled, the difference should be made up by American, under the uninsured motorist provision of his policy.

## THE ISSUE

This case turns upon a question of statutory interpretation. We have previously held that "The expressed public policy of Nevada is that an insurance company may not issue an automobile or motor vehicle liability policy which does not protect the insured from owners or operators of uninsured motor vehicles, unless the named insured rejects such coverage." State Farm Mut. Auto. Ins. v. Hinkel, 87 Nev. 478, 481, 488 P.2d 1151 (1971). See NRS 690B.020(1). Further, an insurance company may not limit such protection if it contravenes the public policy reflected in Nevada's uninsured motorist statute. Allstate Ins. Co. v. Maglish, 94 Nev. 699, 586 P.2d 313 (1978). We cannot agree, however, with appellant's contention that the public policy of this state, as expressed in the uninsured motorist statute, requires appellant's insurer to provide him with uninsured motor vehicle coverage when, as here, he is injured by a motorist who was in fact insured to the statutory minimum required by Nevada's financial responsibility laws.

Unlike the uninsured motorist statutes of many other states, Nevada's statutory scheme contains a comprehensive definition of an "uninsured motor vehicle".[4] The uninsured motorist

[2]NRS 485.210(1) requires a policy or bond "to a limit, exclusive of interest and costs, of not less than $15,000 because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, to a limit of not less than $30,000 because of bodily injury to or death of two or more persons in any one accident. . . ."

[3]It has subsequently been determined that Gardner's share will be approximately $3,300.

[4]NRS 690B.020(3) provides:

"For the purposes of this section the term 'uninsured motor vehicle' means a motor vehicle:

(a) With respect to which there is not available at the department of motor vehicles evidence of financial responsibility as required by chapter 485 of NRS;

(b) With respect to the ownership, maintenance or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident,

statute specifically provides, for example, that a vehicle which is insured, but to limits less than required by the financial responsibility laws of this state (NRS chapter 485), will to that extent be deemed "uninsured". NRS 690B.020(3)(b). The statute further provides for those instances in which a policy is in effect, but the insurer denies coverage or is insolvent. NRS 690B.020(3)(c).

None of these circumstances is presented here. Appellant was injured by a motorist who had in effect, at the time of the accident, a policy which fully complied with NRS chapter 485. The tortfeasor's insurer made available the full amount required. We are compelled, by the plain terms of the statute, to find that the legislature did not intend to preclude insurers from contracting, as respondent did in this case, to deny coverage in situations where their insureds cannot collect from a tortfeasor's insurer the full compensation to which they are entitled, solely because of the number of claimants seeking recovery from a fund which meets the statutory limit.

In so doing, we note that we are in accord with the majority of jurisdictions which have been called upon to interpret the applicability of uninsured motorist statutes in similar multiple-claimant situations. *E.g.,* Chafin v. Aetna Ins. Co., 550 F.2d 575 (10th Cir. 1976) (applying New Mexico law); Criterion Ins. Co. v. Anderson, 347 So.2d 384 (Ala. 1977); Travelers Insurance Company v. Bouzer, 114 Cal.Rptr. 651 (Cal.App. 1974); Simonette v. Great American Insurance Company, 338 A.2d 453 (Conn. 1973); Golphin v. Home Indemnity Company, 284 So.2d 442 (Fla.App. 1973); Brake v. MFA Mutual Insurance Company, 525 S.W.2d 109 (Mo.App.), *cert. denied,* 423 U.S. 894 (1975); Gorton v. Reliance Ins. Co., 391 A.2d 1219 (N.J.

---

or, to the extent of such deficiency, any bodily injury liability insurance or bond in force is less than the amount required by NRS 485.210;

(c) With respect to the ownership, maintenance or use of which the company writing any applicable bodily injury liability insurance or bond denies coverage or is insolvent;

(d) *Used without the permission of its owner if there is no bodily injury* liability insurance or bond applicable to the operator; or

(e) The owner or operator of which is unknown or after reasonable diligence cannot be found if:

(1) The bodily injury or death has resulted from physical contact of such automobile with the named insured or the person claiming under him or with an automobile which the named insured or such person is occupying; and

(2) The named insured or someone on his behalf has reported the accident within the time required by NRS 484.223 to 484.227, inclusive, to the police department of the city where it occurred, or if it occurred in an unincorporated area, to the sheriff of the county or to the Nevada highway patrol."

1978); Shelby Mutual Insurance Co. v. Smith, 341 N.E.2d 597 (Ohio 1976); Simmons v. Hartford Accident & Indemnity Company, 543 P.2d 1384 (Okla. 1975); Lund v. Mission Insurance Company, 528 P.2d 78 (Or. 1974); Kemp v. Fidelity & Casualty Co. of New York, 504 S.W.2d 633 (Tex.Civ.App. 1973); Tudor v. Allstate Ins. Co., 224 S.E.2d 156 (Va. 1976); Strunk v. State Farm Mut. Auto. Ins. Co., 580 P.2d 622 (Wash. 1978).

Appellant has asked this court to follow the minority of jurisdictions which have held that their uninsured motorist statutes require coverage by a claimant's own insurer whenever the full *per person* minimum required by their state's financial responsibility laws is unavailable from the tortfeasor's insurer because of the number of claimants seeking recovery. *E.g.,* Porter v. Empire Fire and Marine Insurance Company, 475 P.2d 258 (Ariz. 1970); Palisbo v. Hawaiian Insurance & Guaranty Co., Ltd., 547 P.2d 1350 (Hawaii 1976); American Mut. Ins. Co. v. Commercial U. Ins. Co., 357 A.2d 873 (N.H. 1976). We note that these jurisdictions are among those in which the legislature has left the task of defining an "uninsured" motorist or motor vehicle to the courts. Such is not the case here. The legislature of this state has provided us with a definition of the term "uninsured motor vehicle", without reaching the situation in which appellant has found himself, and has left no room for this court to find otherwise.[5]

In conclusion, we note that the plaintiff in the case before us did not elect to pay an additional premium for UM coverage beyond the statutory minimum, pursuant to the option mandated by NRS 690B.020(2).[6] Had plaintiff done so, this case would present an entirely different issue, requiring us to consider both the legislative intent in regard to that specific section, and this court's determinations of public policy as expressed in cases like Allstate Ins. Co. v. Maglish, 94 Nev. 699, 586 P.2d 313 (1978).

The judgment is affirmed.

---

[5] We note that the anomaly presented by these circumstances, i.e., that appellant would have been entitled to recovery from his insurer if McFarlane had had no insurance at all, results from the legislative policy of tying the uninsured motorist statute directly to the financial responsibility law, which provides for a "per accident" limit. Accordingly, it is in the legislature, and not before this court, that redress must be sought.

[6] NRS 690B.020(2) provides: "The amount of coverage to be provided shall be not less than the minimum limits for bodily injury liability insurance provided for under the Motor Vehicle Safety Responsibility Act (chapter 485 of NRS), *but may be in an amount not to exceed the bodily injury coverage purchased by the policyholder."* (Emphasis added.)