BILLY J. PEACOCK, Appellant, *v.* DONNIE HARPER, CAPITAL CAR RENTALS, MARV ELLIS LEAVITT, COTTON STATES MUTUAL INSURANCE COMPANY, PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, Respondents.

No. 9647

September 24, 1979                    600 P.2d 223

[Rehearing denied November 27, 1979]

*Daryl Engebregson,* Las Vegas, for Appellant.

*Thorndal & Liles, Ltd.,* and *Leland Eugene Backus,* Las Vegas, for Respondent Cotton States Mutual Insurance Company.

*Beckley, Singleton, DeLanoy, Jemison & Reid, Chartered,* and *Rex A. Jemison,* Las Vegas, for Respondent Pennsylvania National Mutual Casualty Insurance Company.

## OPINION

By the Court BATJER, J.:

Appellant Billy J. Peacock, and at least five other persons, suffered personal injuries as the result of a two-car collision on April 22, 1972, in Clark County, Nevada. Appellant and Troy Paul were passengers in a car owned by Marv Ellis Leavitt and driven by Donnie Harper. Driving on the wrong side of the road, Harper collided head-on with a vehicle owned and driven by Jose Razo, who had three passengers in his car.

The occupants of the Razo vehicle filed suit against Harper and received a judgment for $10,400, which was paid by Preferred Risk Mutual Insurance Company (hereinafter "Preferred"), the insurer of the Harper-driven vehicle. Paul received a judgment in the sum of $10,723.24 against Harper.

Appellant filed suit against respondents seeking damages in excess of $150,000. The cause of action against Cotton States Mutual Insurance Company (hereinafter "Cotton") was predicated on the theory that since Harper has insufficient funds to compensate appellant for his damages, he was an uninsured

motorist. "Cotton" provided appellant with uninsured motorist coverage in the amount of $25,000 per injury and $50,000 per accident. Pennsylvania National Mutual Casualty Insurance Company (hereinafter "Pennsylvania"), who appellant claimed as an insurer because it provided his wife with uninsured coverage, intervened in the action, asserting that Harper was not an uninsured motorist.

Subsequently, "Preferred" filed a complaint in interpleader, admitting that it insured the vehicle owned by Leavitt, that Harper was a permissive user, that it provided coverage in the amount required by the Nevada Motor Vehicle Safety Responsibility Act, see NRS Ch. 485, and tendered into court $19,600, the alleged balance of "Preferred's" coverage after the payment to the occupants of the Razo vehicle, for distribution between Peacock and Paul.

"Cotton" and "Pennsylvania" moved for summary judgment contending that they were not liable to appellant because Harper was not driving an uninsured vehicle. Based upon the fact that "Preferred" had interplead money sufficient to comply with Nevada's Motor Vehicle Safety Responsibility Act and because of other admissions made by "Preferred," who had been permitted to intervene in the suit, the district court granted the motion and certified the judgment pursuant to NRCP Rule 54(b).

Appellant here contends that the district court erred in its determination that the automobile operated by Harper was not an "uninsured motor vehicle". The substance of appellant's claim is that the word "uninsured", as used in all the applicable statutes as well as the appellant's insurance policies, must be construed to mean "underinsured" in relation to the appellant's injury.[1] We disagree.

NRS 690B.020(1)–(2) requires, among other things, that no automobile liability insurance policy be issued unless it contains provisions protecting the insured from injury by uninsured vehicles in amounts not less than the minimum limits for bodily injury liability required by the Motor Vehicle Safety Responsibility Act.[2] The insured may purchase uninsured

---

[1]Several states, including Georgia, Louisiana, Minnesota, Tennessee, Maine, Florida and Virginia, now have statutory reference to *underinsured* motorist coverage.

[2]NRS 690B.020(1)–(2) provides:

"1. No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death,

motorist coverage in any amount so long as it does not exceed his bodily injury liability coverage. However, an insured may, in writing, elect not to purchase uninsured motorist protection. At the time of the aforementioned accident, the Motor Vehicle Safety Responsibility Act required coverage of at least $15,000 for bodily injury to one person and $30,000 for bodily injury to two or more persons in any one accident. NRS 485.210.

Here we are presented with substantially the same facts and issues found in Gardner v. The American Ins. Co., 95 Nev. 271, 593 P.2d 465 (1979), with the exception that "Cotton" provided uninsured motorist coverage for the appellant in the amount of $25,000 per person or $50,000 per accident, instead of the minimum coverage provided in *Gardner.*

As in *Gardner,* appellant argues that finding him not to be an uninsured motorist would create the anomalous situation wherein he, the injured party, would be better off if the tortfeasor had no insurance at all.[3] Appellant, unfortunately, is quite correct in this contention; however, since the Harper-driven vehicle was in fact insured to the extent required by the Nevada Motor Vehicle Safety Responsibility Act, we cannot ignore the statutory definition of "uninsured" and thus cannot hold in appellant's favor.[4]

---

resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle, but no such coverage shall be required in or supplemental to a policy issued to the State of Nevada or any political subdivision thereof, or where rejected in writing, on a form furnished by the insurer describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy unless the coverage is then requested in writing by the named insured. The coverage required in this section may be referred to as 'uninsured vehicle coverage'.

2. The amount of coverage to be provided shall be not less than the minimum limits for bodily injury liability insurance provided for under the Motor Vehicle Safety Responsibility Act (chapter 485 of NRS), but may be an amount not to exceed the bodily injury coverage purchased by the policyholder."

[3]Appellant relies upon Porter v. Empire Fire and Marine Insurance Company, 475 P.2d 258 (Ariz. 1970), which was followed in Palisbo v. Hawaiian Insurance & Guaranty Co., Ltd., 547 P.2d 1350 (Haw. 1976). *But see:* Allstate Insurance Company v. Pesqueria, 508 P.2d 1172 (Ariz.App. 1973). *Porter* has been rejected by courts in other jurisdictions. Golphin v. Home Indemnity Company, 284 So.2d 442 (Fla.App. 1973); Brake v. MFA Mutual Insurance Company, 525 S.W.2d 109 (Mo.App. 1975); Kemp v. Fidelity & Casualty Co. of New York, 504 S.W.2d 633 (Tex.Civ.App. 1973), aff'd, 512 S.W.2d 688 (Tex. 1974). Since the statutes construed in *Porter* and *Palisbo,* unlike NRS 690B.020, contains no specific definition of "uninsured motor vehicle", we find *Porter* and *Palisbo* inapposite.

[4]Insofar as relevant to this appeal, the term "uninsured motor vehicle" is governed by the definition in NRS 690B.020(3)-(4), which provides:

"3. For the purposes of this section the term 'uninsured motor vehicle' means a motor vehicle:

(a) With respect to which there is not available at the department of motor vehicles evidence of financial responsibility as required by chapter 485 of NRS;

As we indicated in *Gardner,* a different issue is present where, as here, the insured purchased uninsured motorist coverage beyond the $15,000/$30,000 statutory minimum. In order to decide this issue we will, as we delineated in *Gardner,* consider both the legislative intent in regard to the option authorized by NRS 690B.020(2), and this court's determination of public policy as expressed in cases like Allstate Ins. Co. v. Maglish, 94 Nev. 699, 586 P.2d 313 (1978).

The Fifty-Sixth Session of the Nevada Legislature enacted, as part of the Nevada Insurance Code, 1971 Nev. Stats. ch. 660 § 538, at 1777, entitled Uninsured Vehicle Coverage, approved May 5, 1971, and effective January 1, 1972. However, on May 5, 1971, the same Legislature approved an amendment to the same section, which authorized additional uninsured motorist coverage "in an amount not to exceed the bodily injury coverage purchased by the policy holder" and defined the term "uninsured motor vehicle", *see* 1971 Nev. Stats. ch. 661 § 27.5, at 1954–1955. We have found nothing further to indicate legislative intent, but this amendment can be read to indicate

(b) With respect to the ownership, maintenance or use of which there is no bodily injury insurance or bond applicable at the time of the accident, or, to the extent of such deficiency, any bodily injury liability insurance or bond in force is less than the amount required by NRS 485.210;

(c) With respect to the ownership, maintenance or use of which the company writing any applicable bodily injury liability insurance or bond denies coverage or is insolvent;

(d) Used without the permission of its owner if there is no bodily injury liability insurance or bond applicable to the operator; or

(e) The owner or operator of which is unknown or after reasonable diligence cannot be found if:

(1) The bodily injury or death has resulted from physical contact of such automobile with the named insured or the person claiming under him or with an automobile which the named insured or such person is occupying; and

(2) The named insured or someone on his behalf has reported the accident within the time required by NRS 484.223 to 484.227, inclusive, to the police department of the city where it occurred, or if it occurred in an unincorporated area, to the sheriff of the county or to the Nevada highway patrol.

4. For the purposes of this section the term 'uninsured motor vehicle' also includes, subject to the terms and conditions of coverage, an insured other motor vehicle where:

(a) The liability insurer of the other motor vehicle is unable because of its insolvency to make payment with respect to the legal liability of its insured within the limits specified in its policy; and

(b) The occurrence out of which legal liability arose took place while the uninsured motor vehicle coverage required under paragraph (a) was in effect; and

(c) The insolvency of the liability insurer of the other motor vehicle existed at the time of, or within 2 years after, such occurance.

Nothing contained in this subsection shall be deemed to prevent any insurer from providing insolvency protection to its insureds under more favorable terms.''

intent to authorize the additional uninsured motorist coverage against an injury caused by an "uninsured" motor vehicle, not an "underinsured" motor vehicle.

With regard to this court's interpretation of public policy, we made it clear in United Service Auto. Ass'n v. Dokter, 86 Nev. 917, 478 P.2d 583 (1970), *see also,* Allstate Ins. Co. v. Maglish, *supra,* and State Farm Mut. Auto. v. Christensen, 88 Nev. 160, 494 P.2d 552 (1972), that the insureds were not receiving a windfall by recovering compensation because they had paid more than one premium for the indemnity of each separate policy. Here the insureds received no more and no less than that for which they had paid a premium.

In order to permit appellant to recover under his policies we would be required to reconstruct NRS 690B.020 to define an "uninsured motor vehicle" as a motor vehicle whose coverage, no matter how large, is inadequate in relation to the damages suffered by the injured party. We find no ambiguity in the applicable statutes which would allow us to interpret into them such a significant addition to the coverage required. Furthermore, there is no indication that the object of the legislation was to provide such coverage.

Accordingly, on the authority of *Gardner,* as well as the cases relied on therein, we affirm the judgment of the district court.[5]

MOWBRAY, C. J., and THOMPSON, GUNDERSON and MANOUKIAN, JJ., concur.

---

[5]*See* Wildiss, A Guide to Uninsured Motorist Coverage, §§ 2.34A to .35A, 2.37A to .38A (1978); *see* generally 26 A.L.R.3d 883 (1969). *Cf.* Vigneault v. Travelers Ins. Co., 382 A.2d 910 (N.H. 1978); Black v. Middlesex Mut. Ins. Co., 382 A.2d 914 (N.H. 1978); Spence v. State Farm Mut. Auto. Ins. Co., 221 S.E.2d 643 (Ga.App. 1975).