ON APPLICATION FOR WRITS ON REMAND
ELORA C. FINK, Judge Pro Tem.
This matter comes before us on an application for writs arising out of two consolidated suits for personal injuries sustained in an automobile accident. The relator, Shelter Mutual Insurance Company, seeks reversal of the district court’s ruling denying its motion for summary judgment. At issue is whether Shelter’s automobile insurance policy provided underinsured motorist coverage to the plaintiffs, Robert Gilchrist and Constance Defoe.
The application originally was filed in this court on February 11, 1991 and was denied on February 28, 1991, with the statement, “Writ denied. On showing made we see no need to exercise our supervisory jurisdiction.” On April 26,1991, the *514 Supreme Court granted the relator’s writ application and remanded the matter to us “for briefing and opinion.”[1] 578 So.2d 120. After reviewing the matter on remand, we vacate our former ruling and grant the application, finding the relator entitled to summary judgment.
FACTS
On December 26,1988 plaintiff Robert R. Gilchrist was a guest passenger in an automobile operated by defendant/consolidated plaintiff Constance Defoe and owned by defendant Stansel Defoe in Jackson County, Missouri, when they were injured in a collision with a vehicle driven by Susan Pearman. Pearman’s liability insurance limits were $25,000 per person. Gilchrist settled with Pearman and her insurer for the policy limits and filed suit in Louisiana against various other parties, including Shelter as Defoe’s uninsured motorist insurance carrier. Gilchrist sought recovery from Shelter on the ground that the Pear-man vehicle was underinsured, as did Defoe in her suit.[2]
Shelter moved for summary judgment, contending that under Missouri law Pear-man was not an uninsured motorist because she had the statutorily-required minimum liability limits. Shelter argued that Missouri does not allow “underinsured” recovery when the tortfeasor carries the statutory minimum in liability coverage and, therefore, there is no coverage under Shelter’s policy.
In opposition to the motion, plaintiff Gilchrist asserted he is entitled to recover underinsured damages because Shelter contracted to insure Defoe for $100,000 in uninsured motorist coverage, subject to a credit for “all sums paid on account of such ... injury by or on behalf of (i) the owner or operator of the uninsured highway vehicle and (ii) any other person or organization jointly or severally liable.” (Shelter Mutual Insurance Company Automobile Insurance Policy, § V, 114, “Limits of Liability.”) Because the Shelter policy had limits of $100,000 per person and $300,000 per accident and the plaintiff received $25,000 from Pearman’s insurer, Gilchrist argued he should still have $75,000 of coverage available under Shelter’s limits. Defoe joined in Gilchrist’s arguments.
In denying the motion, the trial judge stated, “I find issues of fact [on] which a judge or jury could agree or disagree. Also, as a matter of law, I do not share the same conclusions of law that counsel for the insurance company shares.”
Despite the judge’s statement, we find no issues of fact that are material to the applicability of the uninsured motorists coverage. Accordingly, we need consider only whether Shelter is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. It is undisputed that the applicable substantive law is Missouri insurance law. See First National Bank of Lafayette v. Stovall, 128 So.2d 712 (La.App. 4 Cir.1961).
LAW
The Missouri uninsured motorist statute requires motorists and vehicle owners to carry automobile liability insurance in an amount not less than $25,000 per person and $50,000 per accident. Mo.Rev. Stat. § 303.030.5 (1986). In addition, Missouri requires that all automobile liability insurance policies delivered or issued for delivery in Missouri provide uninsured motorist coverage in an amount equal to the liability coverage provided by law. Mo. Rev.Stat. § 379.203.1 (1982). Missouri does not, however, mandate undermsured motorist coverage. Rodriguez v. General Acc. Ins. Co., 808 S.W.2d 379 (Mo. banc 1991).
The relevant portion of the Shelter policy reads as follows:
*515 V — UNINSURED MOTORISTS INSURANCE
1. Coverage E — Uninsured Motorists (Damages for Bodily Injury) — The Company will pay all sums which the insured ... shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle * * *.
2. Definitions — With respect to the insurance afforded under Coverage E, the following additional definitions apply:
$ * * sje * *
“uninsured highway vehicle” means:
(a) a highway vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such highway vehicle, or with respect to which there is a bodily injury, liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder, or
(b) a hit-and-run vehicle;
* * * * * *
(c) an insured highway vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits of any applicable financial responsibility law because of insolvency.
4. Limits of Liability — With respect to the insurance afforded under Coverage E:
(a) The limit of liability stated in the Declarations as applicable to “each person” is the limit of the company’s liability for all damages ... because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the Declarations as applicable to “each accident” is the total limit of the Company’s liability for all damages ... because of bodily injury sustained by two or more persons as the result of any one accident.
(b) Any amount payable under the terms of this Coverage E because of bodily injury sustained in an accident by a person who is an insured under this Coverage E shall be reduced by:
(1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured highway vehicle and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under Coverage A * * *.
[Emphasis added.]
Shelter relies upon the cases of Brake v. MFA Mut. Ins. Co., 525 S.W.2d 109 (Mo.App.1975) and Cook v. Pedigo, 714 S.W.2d 949 (Mo.App.1986), as authority for its contention that an wwderinsured motor vehicle is not necessarily an «^insured motor vehicle within the meaning of Missouri law.
In Brake, supra, the tortfeasor had the minimum required liability insurance but with limits insufficient to cover the plaintiff’s damages. The insurance policy at issue defined “uninsured highway vehicle” as “a highway vehicle with respect to the ownership, maintenance or use of which there is no bodily injury ... insurance policy applicable at the time of the accident with respect to any person ... legally responsible for the use of such highway vehicle,” the same language as in Shelter’s policy. The Brake court held that the tort-feasor’s automobile did not come within the language of either the statute or the insurance policy; it was not “uninsured” because the plain language of the statute and the policies was that “[a]n uninsured vehicle is one which is not insured.” Id., at 112.
In Cook v. Pedigo, supra, the tortfeasor had liability insurance but in less than the required minimum amount. The court held that an uninsured motor vehicle includes *516 one on which there is less insurance than the statutorily required minimum at the time of the accident.
The plaintiffs employ a “public policy” argument:
The policyholder entered into a contract which clearly provides for $100,000 in coverage less credit for any payment as defined in their policy. Why would any insurance company issuing policies in Missouri write for UM coverage greater than $25,000 if that was the extent of their exposure? Shelter’s position is that the only way a victim can recover under the UM of Shelter[’s] policy is if the tortfeasor has less than the statutory requirements or no insurance at all. It is ludicrous to suggest that a victim should have $100,000 available to him if the other vehicle is truly uninsured and have only $25,000 available if the tortfeasor meets the statutory minimum. [Gilchrist’s memorandum in opposition to the motion for summary judgment.]
Gilchrist and Defoe also cite Cook v. Pedi-go, supra, as authority for the contention that an under insured motorist is an uninsured motorist for purposes of an insured’s recovery against his own uninsured motorists carrier.
We find the Cook case distinguishable, however. It turned on the fact that the tortfeasor, although insured, carried less than the statutory minimum liability limits. This differs from plaintiffs’ situation, in which they contend the defendant tort-feasor (Pearman) was underinsured simply because her policy limits, although the statutory minimum, are less than the plaintiffs’ alleged damages.
As Shelter points out in its reply brief in this court, § V, 114 of its policy does not purport to establish, define or create coverage. It merely describes the limits of liability after coverage has been established pursuant to other provisions of the Shelter policy.
Shelter also points out that the uninsured motorists coverage is available only in five situations under the policy language — specifically, where there is:
1.a vehicle with no liability insurance; 2. a vehicle, the liability insurer of which denies coverage;
3. a hit-and-run vehicle;
4. a vehicle, the liability insurer of which has become insolvent.
Missouri courts have added a fifth definition of an uninsured vehicle, i.e. a vehicle on which there is liability coverage in an amount less tha[n] the statutory minimum. * * *
In Krombach v. Mayflower Ins. Co., Ltd., 785 S.W.2d 728 (Mo.App.1990), a Missouri court of appeal held that an insurance policy provided underinsured motorists coverage for the total damages sustained, subject to the coverage amount limitation of the policy. In that case, however, the policy defined an uninsured motor vehicle as, inter alia, a vehicle with the minimum coverage required by law where the minimum is less than the limit of coverage under the uninsured motorists part of the policy. In addition, the policy specifically stated, “The term uninsured motor vehicle also includes an underinsured motor vehicle,” although it did not define “under-insured.”
In interpreting those provisions, the Missouri court pointed out,
The interpretation of the meaning of an insurance policy is a question of law.
* * * [T]he function of this court is to interpret and enforce an insurance policy as written; not to rewrite the contract.
* * * In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties. * * *
The language of an insurance policy is ambiguous when it is reasonably and fairly open to different constructions.
* * * In interpreting whether the language used in the policy is ambiguous, the words will be tested in light of the meaning which would normally be understood by the layperson who bought and paid for the policy. * * * Being a contract designated to furnish protection, an insurance policy will be interpreted so as to afford coverage and not to defeat coverage. * * *
*517 Where an insurance policy is open to different constructions, that most favorable to the insured must be adopted. * * * However, the court cannot create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is applicable. * * *
[Citations omitted.]
Kromback v. Mayflower Ins. Co., Ltd., supra, at 731.
Bearing in mind not only these requirements, but also that we must follow Missouri’s law and public policy rather than Louisiana’s, we conclude the insurance policy here does not provide underin-sured motorists coverage. First, the insurance policy itself, in plain language, limits uninsured motorists coverage to the four situations listed above, none of which describe the situation before us. Second, Missouri has neither positive law nor public policy requiring underinsured motorists coverage be extended where uninsured motorists coverage exists. Accordingly, we cannot find there is underinsured motorists coverage here.
DECREE
For the foregoing reasons, our previous ruling denying writs is hereby vacated and the application is granted. The judgment of the district court denying summary judgment to the relator, Shelter Mutual Insurance Company, is reversed and the matter is remanded for entry of judgment in favor of the relator consistent with this decision.
WRITS GRANTED; REVERSED AND REMANDED.
GAUDIN, J., dissents with written reason.

. Following the remand, there was a change in the composition of the panel of this Court due to the retirement of one member of the original panel.

. The pleadings and briefs do not inform us whether Defoe also settled with Pearman. The motion for summary judgment, however, is directed at the claims of both Gilchrist and Defoe under the uninsured motorists section of the Shelter policy.