### A99A1306, A99A1486. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. GARZONE; and vice versa.
(523 SE2d 386)

MILLER, Judge.

Planning to build and then sell a residential dwelling, John Garzone obtained a fire insurance policy from Georgia Farm Bureau Mutual Insurance Company to insure the anticipated structure for a period of one year. Six months later when the home was three-fourths complete, a fire destroyed it. Garzone demanded that Georgia Farm pay the policy's stated face amount of $125,000. Georgia Farm would agree to pay only $93,179.25, the amount necessary to rebuild the structure. Because of a dispute between Garzone and his lender, Georgia Farm, within 60 days of Garzone's demand, filed an interpleader action, paying the lesser amount into the court's registry and naming Garzone and his lender as defendants.[1] Garzone counterclaimed for the full amount of the policy and for bad faith under OCGA § 33-4-6.

Concluding that OCGA § 33-32-5 required Georgia Farm to pay the higher amount, the court entered judgment in favor of Garzone for the full amount of the policy but denied his claim for bad faith. Georgia Farm appealed (Case No. A99A1306), and Garzone cross-appealed (Case No. A99A1486). Because the insurance policy was a "builders' risk" policy exempt from OCGA § 33-32-5 (a), we reverse in Case No. A99A1306 and hold that the statute did not override the policy provision that Garzone receive no more than the amount needed to rebuild the structure. Since Georgia Farm prevails, we hold that the court properly denied the claim for bad faith. Judgment in Case No. A99A1486 is affirmed.

### Case No. A99A1306

1. The policy insured Garzone "to the extent of the actual cash value of the property at the time of loss, but not exceeding the

---

[1] The lender subsequently received $55,000 of the paid-in amount and was dismissed as a party.

amount which it would cost to repair or replace the property with material of like kind and quality. . . ." The amount due Garzone is the replacement cost unless a statute overrides the policy language.

OCGA § 33-32-5 (a) applies to fire insurance policies which are issued to natural persons and specifically describe a one- or two-family residential building or structure located in Georgia. If after 30 days of the policy's issuance the structure is destroyed by fire without fraudulent or criminal fault by the insured, the insurer must pay the face amount of the policy regardless of other policy provisions setting forth the amount to be paid. But this statute does not apply if "[t]he completed value of [the] building or structure is insured under a builders' risk policy."[2]

Georgia Farm first argues that because the structure was not complete, the policy did not describe a "residential building or structure" as required by the statute.[3] The policy described a "1½ story, frame constructed, approved roof, one family rental dwelling located" at a Georgia address. Because a dwelling is a common description for a residence,[4] the policy described a residential building and thus fit within the language of the statute. No language in the statute exempts policies insuring incomplete buildings.

But the statute does exempt "builders' risk" policies.[5] No statute or regulation defines such policies, although several cases have passingly referred to them.[6] An annotation on "builders' risk" policies describes them as "ordinarily issued to a contractor or a property owner for the purpose of insuring him against loss during the construction, alteration, or repair of a building. . . ."[7] The annotation indicates that a policy provision granting permission to complete the building is equivalent to a "builders' risk" clause.[8] Thus, the court below and Garzone both assert that one reason the policy at issue was not a "builders' risk" policy was because the policy contained no "permission to complete" clause.

---

[2] OCGA § 33-32-5 (b) (4).

[3] OCGA § 33-32-5 (a).

[4] Black's Law Dictionary, p. 505 (6th ed. 1990); see OCGA § 13-2-2 (2) (words in contract bear their common signification); *Park 'N Go of Ga. v. U. S. Fidelity &c. Co.*, 266 Ga. 787, 791 (471 SE2d 500) (1996) ("[a]n insurance policy is governed by the ordinary rules of contract construction") (citation and footnote omitted).

[5] OCGA § 33-32-5 (b) (4).

[6] See, e.g., *Moultrie Ins. Agency v. Goodbar*, 203 Ga. App. 677 (417 SE2d 658) (1992); *Currahee Constr. Co. v. Rabun County School Dist.*, 180 Ga. App. 471 (349 SE2d 487) (1986); *E. C. Long, Inc. v. Brennan's of Atlanta*, 148 Ga. App. 796, 800 (252 SE2d 642) (1979); *American Ins. Co. v. Bateman*, 125 Ga. App. 189, 190 (186 SE2d 547) (1971).

[7] Anno., Builder's Risk Ins. Policies, 94 ALR2d 221, 224, § 1 (a) (1964); see 9 Couch on Ins. 3rd, § 132:20 (1997) ("[a] builder's risk policy is a species of property loss insurance by which the builder seeks to insulate himself from liability occasioned by damage to or loss of the structure which the builder has contracted to produce").

[8] Anno., Builder's Risk Ins. Policies, supra at 225.

It is undisputed that the building was under construction. Our review of the policy[9] reveals three provisions indicating that the dwelling was under construction and that therefore this policy was a "builders' risk" policy. First, § XIV.D. expressly grants Garzone "[p]ermission . . . to complete structures in course of construction." Second, § VI insures "material and supplies intended for use in construction . . . of the structures covered hereunder," while such materials and supplies are located on the premises.[10] Garzone even emphasized this provision in his counterclaim. Third, although the policy does not cover buildings vacant for more than 60 days, § XIV.B. provides that "[a] building in process of construction shall not be deemed vacant."

The court below held that because the policy tracked the language of standard fire policies set forth in § 120-2-19-.01 of the Georgia Administrative Code, it could not be a "builders' risk" policy. The court erred in this conclusion. OCGA § 33-32-1 (a) requires *all* fire insurance policies in Georgia (with one inapplicable exception) to conform to the provisions of this regulation. The policy contained that language and also added the terms, cited above, demonstrating that it was intended to be a "builders' risk" policy.

Because the policy is a "builders' risk" policy, OCGA § 33-32-5 (a) does not override the policy's provisions regarding the amount of payment to Garzone.[11] The judgment that Georgia Farm is liable for the full $125,000 amount is reversed, and the case is remanded with the instruction that judgment be entered that the amount paid into the court's registry is deemed to be full payment of Georgia Farm's obligations under the policy.

### Case No. A99A1486

2. Because in Division 1 we rule that Georgia Farm paid the correct amount into the court registry within 60 days of the demand letter, Garzone cannot recover for bad faith or attorney fees under OCGA § 33-4-6. The judgment in Case No. A99A1486 against Garzone's counterclaim on this issue is affirmed.

*Judgment affirmed in Case No. A99A1486. Judgment reversed and case remanded with instruction in Case No. A99A1306. Smith and Eldridge, JJ., concur.*

---

[9] Because the parties stipulated to the facts and had the court decide the case on the written record, our review is de novo and we give no deference to the trial court's legal conclusions. *McCombs v. Southern Regional Med. Center*, 233 Ga. App. 676, 681 (2) (504 SE2d 747) (1998).

[10] Cf. *Bateman*, supra, 125 Ga. App. at 189, hn. 2 ("builders' risk" insurance policy covered materials and supplies to be used in the construction of the building); *Shamrock Homebuilders v. Cherokee Ins. Co.*, 486 SW2d 548, 550 (Tenn. App. 1972) (same).

[11] See OCGA § 33-32-5 (b) (4).

DECIDED OCTOBER 7, 1999.

*Watson, Dana & Gottlieb, Dennis D. Watson, Douglas R. Woodruff*, for appellant.
*Clifton M. Patty, Jr., Christopher C. Young*, for appellee.